**Samuel COLAIZZI and Samuel Indovina, Plaintiffs-Appellees,**

v.

**Daniel WALKER, (former) Governor of Illinois, Defendant-Appellant.**

Nos. 86–1175, 86–1764.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1986.

Decided Feb. 12, 1987.

Rehearing and Rehearing En Banc Denied April 8, 1987.

Barry Sullivan, Jenner & Block, Chicago, Ill., for defendant-appellant.

Wayne B. Giampietro, Dejong, Poltrock & Giampietro, Chicago, Ill., for plaintiffs-appellees.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and PELL, Senior Circuit Judge.

POSNER, Circuit Judge.

This antique case (now more than 12 years old), here for the third time, requires us to decide whether Daniel Walker, who was Governor of Illinois in 1974, violated a "clearly established" constitutional right of two public officials whom he fired, without notice or an opportunity for a hearing, for misconduct in office. If their right to notice and a hearing was not clearly established in 1974, Walker is immune from damage liability and their suit for damages must be dismissed. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Colaizzi was the superintendent of the division of private employment agencies in the Illinois Department of Labor. Indovina was an investigator for the division, acting

as Colaizzi's factotum. Neither was protected by civil service regulations or by an employment contract; both were employees at will. Thus they cannot and do not argue that by firing them Walker deprived them of property, with or without due process of law. They argue that he deprived them of liberty, specifically liberty of occupation, by firing them on grounds whose public announcement falsely stigmatized them as dishonest and made it unlikely that they would ever again be employed in positions (whether in the public or the private sector) of comparable responsibility to those they were fired from. See *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam). We were told at argument that Colaizzi is unwell and does not work at all and that Indovina is a car salesman.

The day they were fired Governor Walker said in a press release that they had been fired for "misconduct" with reference to an employment agency. Discovering that one of its employees had embezzled funds, the agency had reported him to the state's attorney for prosecution, and Colaizzi and Indovina had then "intervened" with the agency on behalf of the employee. (We are quoting from the release.) "With careful circumlocution" they had "repeatedly urged [the agency's] owners to 'consider' dropping or reducing their criminal and civil claims," while at the same time making clear that if "the owners refused to 'cooperate' in this respect, Colaizzi would file a series of administrative charges" against the agency that might result in suspension or revocation of the agency's license. They had carried out this threat: after Colaizzi appointed himself the hearing officer to adjudicate the charges that he brought against the agency, he and Indovina had suspended the agency's officers from acting as employment counselors for three days.

In another statement, released the same day, Governor Walker said that Colaizzi and Indovina had "attempted to use the power of their office to force a company under their supervision to drop possible criminal actions against an employee." The statement called them "bad apples" and "undesirables" who were guilty of "wrongdoing." Neither this statement nor the press release accused Colaizzi or Indovina of criminal wrongdoing or assigned a motive for their intervention on behalf of the (unnamed) employee of the employment agency.

Colaizzi and Indovina sued Walker in 1974 under 42 U.S.C. § 1983, seeking damages. The district court granted Walker's motion to dismiss, holding that the plaintiffs had not stated a claim for deprivation of liberty in violation of the due process clause of the Fourteenth Amendment. This court reversed, 542 F.2d 969 (7th Cir. 1976), noting that to fire a public employee for publicly announced reasons likely to stigmatize the employee deprives him of liberty, and remarking that "it cannot seriously be contended that the charges contained in the press releases did not gravely stigmatize the reputation of Colaizzi and Indovina." *Id.* at 974. On remand the district court again dismissed the case. The ground was that Walker was entitled to immunity because he had fired Colaizzi and Indovina in the good-faith belief that they were guilty of the misconduct of which he had accused them. Again this court reversed, 655 F.2d 828 (7th Cir.1981), this time saying that the relevant question was not whether Walker believed that the charges were true but whether he believed that the procedures used to verify them were adequate.

■ Then came *Harlow*, which established a new, objective test for immunity: a public official is immune, regardless of what he actually believed to be the legal position, if the constitutional right that he is accused of having violated was not clearly established on the date of the alleged violation. See 457 U.S. at 818, 102 S.Ct. at 2738. Walker moved for summary judgment on the authority of *Harlow*. The district court denied the motion but certified its order for an immediate appeal under 28 U.S.C. § 1292(b), and we accepted the certification. Resort to 1292(b) was unnecessary, however. The refusal to dismiss a case against a public officer on grounds of immunity is appealable as of

right under the collateral order doctrine, *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 2815–17, 86 L.Ed.2d 411 (1985), since the immunity to which the officer is entitled is not just immunity from having to pay damages but immunity from having to stand trial. The analogy to appeals from refusals to dismiss criminal charges on double-jeopardy grounds, see *Abney v. United States,* 431 U.S. 651, 656–62, 97 S.Ct. 2034, 2038–42, 52 L.Ed.2d 651 (1977), is transparent.

■ The public employee's constitutional right not to be fired on "stigmatizing" grounds is one of the more mysterious innovations in modern constitutional law. Reputation is not "property" or "liberty" within the meaning of the due process clauses of the Fifth and Fourteenth Amendments. *Paul v. Davis,* 424 U.S. 693, 711–12, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976). If it were, defamation by a public official would be a federal tort, which no one believes. It seems odd that merely because a defamatory statement (not a deprivation of liberty) is coupled with firing an employee-at-will (not a deprivation of property), the public official is guilty of a federal tort. It sounds like the legal equivalent of $0 + 0 = 1$. One might have thought that the only significance of the firing would be to make it easier for the victim to prove damages in a suit in state court for defamation, assuming he wasn't promptly hired in an equally good job.

■ To understand the tort you must go back to its origins (discussed in *Board of Regents v. Roth,* 408 U.S. 564, 573–74, 92 S.Ct. 2701, 2707–08, 33 L.Ed.2d 548 (1972)) in cases where public employees were fired for suspected Communist sympathies. See, e.g., *Joint Anti-Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 185, 71 S.Ct. 624, 655, 95 L.Ed. 817 (1951) (Jackson, J., concurring). In the atmosphere of those times, employees fired on such grounds found it difficult to land equally responsible jobs, public or private. The circumstances of discharge, at least if they were publicly stated, had the effect of blacklisting the employee from employment in comparable jobs. If a state or the federal government formally banned a person from a whole category of employment, it would be infringing liberty of occupation—a component of the liberty that the due process clauses of the Fifth and Fourteenth Amendment protect, and recognized as such almost since the beginning of this nation. See *Bigby v. City of Chicago,* 766 F.2d 1053, 1057 (7th Cir.1985). If it did this without due process of law, therefore, it would be violating the Constitution. By firing a worker on publicly stated grounds that kill his chances for further employment in his chosen occupation, the government in effect excludes him from that occupation, and thus deprives him of liberty in a Fourteenth Amendment sense, and thus must give him due process of law. See *id.; Lawson v. Sheriff of Tippecanoe County,* 725 F.2d 1136, 1138–39 (7th Cir.1984).

That the interest protected is occupational liberty rather than reputation was made reasonably clear by *Paul v. Davis, supra,* which held that reputation is not property or liberty in the constitutional sense. Some cases continue to suggest that defamation coupled with firing is a deprivation of liberty, see, e.g., *Perry v. FBI,* 781 F.2d 1294, 1300 (7th Cir.1986) (en banc); but since neither reputation nor government employment at will is an aspect of the liberty (or property) protected by the Fifth and Fourteenth Amendments, these cases are better explained as holding that to fire a worker to the accompaniment of public charges that make it unlikely that anyone will hire him for a comparable job infringes his liberty of occupation. See *Goulding v. Feinglass,* 811 F.2d 1099, 1102–03 (7th Cir.1987).

This wrinkle (which is not important to the present case) to one side, the basic doctrinal structure was clear by 1974. But it does not follow that the right of Colaizzi and Indovina to due process if they were fired to the accompaniment of the public statements quoted earlier (and if those statements were false, as we shall assume for purposes of this appeal) was "clearly established," the test under *Harlow v. Fitzgerald.* That test would have little bite if a right "clearly established" *at any*

*level of generality* could survive it. "The words 'clearly established ... constitutional rights' may not be used to read the defense of immunity out of federal tort law by the facile expedient of stating constitutional rights in the most general possible terms, so that anyone who prevails on the merits of a claim based on (for example) the First Amendment's free exercise of religion clause, however novel that claim is, can defeat the defense of immunity simply by pointing out that the right to the free exercise of one's religion has long been a clearly established constitutional right. The right must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful." *Azeez v. Fairman,* 795 F.2d 1296, 1301 (7th Cir.1986); cf. *Benson v. Allphin,* 786 F.2d 268, 275–76 (7th Cir.1986); *Floyd v. Farrell,* 765 F.2d 1, 5 (1st Cir.1985); *LeSavage v. White,* 755 F.2d 814, 821 (11th Cir.1985). This is the law of this circuit, notwithstanding *Chapman v. Pickett,* 801 F.2d 912 (7th Cir.1986), where Judge Easterbrook, in dissent, relied heavily on *Azeez* to argue that the defendants were entitled to immunity, see *id.* at 923—yet they lost the case. The majority did not question the principle that "until the constitutional right has been stated so that reasonably competent officers would agree on its application to a given set of facts, it has not been 'clearly established'" (*id.*). It did not purport to overrule *Azeez*—and indeed had no authority to do so, since the opinion in *Chapman* was not circulated to the full court before publication. See 7th Cir.R. 16(e). Moreover, unlike the present case, on a previous appeal in *Chapman* this court had rejected a defense of immunity using the same "clearly established" standard that the Supreme Court was later to adopt in *Harlow.* See *Chapman v. Pickett,* 586 F.2d 22, 28–29 (7th Cir.1978). This bolstered the view of the majority in the latest *Chapman* appeal that the earlier rejection of immunity was the law of the case. See 801 F.2d at 919 n. 5. We shall see that such an argument is not available here.

█ In 1974—or, for that matter, 1874—a public employee had a clearly established right not to be deprived of life, liberty, or property without due process of law; but of course it would not follow that there was no defense of immunity the first time a public employee was fired in circumstances that falsely branded him as unworthy to be hired for a responsible position. The rule that a stigmatizing dismissal deprives the dismissed employee of his occupational liberty is a nonobvious implication of the due process clause. More to the point, the scope and details of the rule are not apparent merely from a statement of it. In deciding how clearly defined the federal right that the defendant has infringed must be with reference to particular circumstances in order to defeat a defense of official immunity, we must consider the purpose of the defense. It is to enable public officials to exercise the powers of office without worrying that years later a court may decide that they were violating someone's constitutional rights. Public officials can't do their jobs without sometimes hurting people, and—since they are not paid to be risk takers—might become unduly timorous if, every time their initiative caused an injury to someone, it would mean they had bought themselves a lawsuit prompted by the hope of persuading a court to make a novel application of some established constitutional right. Cf. *Carson v. Block,* 790 F.2d 562, 564 (7th Cir. 1986). We must be wary both of using hindsight to make an untidy body of case law seem clear and directive at the time the public official was called on to act, and of imagining that public officials have the training and experience in extracting legal rules from case law that appellate judges have.

Our conclusion is that the test for immunity should be whether the law was clear in relation to the specific facts confronting the public official when he acted. Hence we must decide whether it was clear in 1974 that to fire Colaizzi and Indovina without notice and an opportunity to be heard, to the accompaniment of false public statements that they were guilty of misconduct and wrongdoing and of misusing their office to help an employee of one of the entities that they regulated and of being

undesirables and bad apples, violated their constitutional rights.

Some of our then-recent cases, notably *Hostrop v. Board of Junior College District No. 515*, 471 F.2d 488, 494 (7th Cir. 1972), implied that there might well be a violation in these circumstances; there we held that to accuse the plaintiff "of misrepresentations, supplying false information, and withholding important information" amounted to "charging him with an unsavory character trait such as dishonesty or immorality." See also *Suarez v. Weaver*, 484 F.2d 678 (7th Cir.1973) (charge of irregularities, though not illegalities, in a doctor's practices in prescribing narcotic drugs). But the line of decision did not run true. In *Jeffries v. Turkey Run Consolidated School Dist.*, 492 F.2d 1, 2–3 (7th Cir.1974), we held, in an opinion by Judge (now Justice) Stevens, that a charge against a school teacher of "highly unethical conduct in her relationships with a fellow staff member" (*id.* at 2 n. 1) was not sufficiently stigmatizing to bring about a deprivation of liberty. And at about the same time—just months before Walker fired Colaizzi and Indovina—we decided *Adams v. Walker*, 492 F.2d 1003 (7th Cir. 1974), a case much like the present one, in which Walker also was the defendant—and won. Walker had fired Adams, a member of the Illinois Liquor Control Commission, in a telegram (made public) that accused him of "incompetence, neglect of duty and malfeasance in office and other cause." *Id.* at 1004. An accompanying press release accused Adams of having fined a licensee for the making of political contributions, rather than cancelling his license as the law required Adams to do. *Id.* at 1009 n. 3. This court, with Judge Pell dissenting, held that Walker had not violated Adams' constitutional rights. There was no majority opinion. Judge Cummings emphasized that a finding of misconduct was a statutory predicate for firing a member of the Liquor Control Commission and also distinguished between "an unelaborated charge of 'incompetence, neglect of duty and malfeasance in office'" and "charges of dishonesty, immorality, disloyalty, Communism, subversive activities, alcoholism

or narcotics violations." *Id.* at 1008–09. He gave no weight to the elaboration in the press release of the finding of misconduct. Judge (now Justice) Stevens, while stating that he agreed with Judge Cummings' analysis, added that he doubted whether the governor of a state could ever be held liable for firing a nontenured employee without a hearing; such liability, he thought, would unduly limit the autonomy of state government. See *id.* at 1010.

■ When the present case was first appealed to this court, the court did not attempt to distinguish *Adams*; indeed, it cited it as authority for holding Walker liable in this case, but without explaining how this was possible given that Walker had won the *Adams* case. Maybe, though, the two cases can be distinguished; alternatively, maybe *Adams* is wrong, and our first *Colaizzi* opinion was intended to bury it, without the proper obsequies (which include, as we have said, circulation to the full court before publication); or maybe that opinion was wrong. But none of these issues is before us on this appeal. The only issue is whether a reasonable man in Governor Walker's position could not have doubted that he was violating Colaizzi's and Indovina's constitutional rights by refusing to give them notice and a hearing before firing them for misconduct. So close is this case to *Adams* that we think that, on the contrary, anyone in Walker's position would have been lulled into thinking that *Adams* provided a safe haven. *Adams* had suggested a distinction, consistent with the historical origins of the public employee's constitutional right not to be fired (without due process) in circumstances that "stigmatize" the employee, between firing for "mere" misconduct and firing for gross personal or professional misbehavior. The distinction may not be tenable, but there it was, not directly contradicted by any other decision (and anyway it was the circuit's latest decision). Walker was entitled to rely on it. He was entitled to believe that as long as he did not cross the line, he was not violating anyone's constitutional rights—and to believe that he was not crossing it in this case. He

had fired Adams for refusing to enforce the law and had described Adams' conduct not merely as incompetence and neglect of duty but as "malfeasance." Shortly afterward he fired Colaizzi and Indovina for enforcing the law in a selective and unfair fashion against a firm that refused to lay off an employee whom for undisclosed reasons Colaizzi and Indovina wanted to help—and called this misconduct "malfeasance" too. In both this case and *Adams* the fired officials were accused of misusing their official powers; in neither case was the motivation for the misuse of power explained. Walker accused none of the three fired employees of criminal misconduct or personal corruption. The accusation was partiality, favoritism. Walker was entitled to rely on *Adams* as authority for the proposition that he could fire a person (without a hearing) to the accompaniment of such an accusation without getting into constitutional trouble. He could gain added succor from Judge Stevens' concurrence, which advanced a broader theory of immunity that, to our knowledge, no court has repudiated.

■ We disagree with the plaintiffs' suggestion that our first opinion in this case, by describing the circumstances of their firing as unquestionably stigmatizing, is the law of the case and requires affirmance. The issue on the first appeal was the state of the precedents not in 1974 but in 1976, and no attempt was made in this court's opinion to evaluate the reasonableness of Walker's relying on *Adams*. Immunity simply wasn't the issue in that first appeal. It was the issue in the second appeal, but that was before *Harlow*, and an intervening change of law is a familiar reason for refusing to apply the law of the case doctrine. See, e.g., *Arizona v. California*, 460 U.S. 605, 618–19 and n. 8, 103 S.Ct. 1382, 1391–92 and n. 8, 75 L.Ed.2d 318 (1983); *Lenard v. Argento*, 808 F.2d 1242, 1245–46 (7th Cir.1987). Unlike *Chapman v. Pickett*, this court's discussion of the immunity issue in the second round of the present case did not anticipate the "clearly established" standard of *Harlow v. Fitzgerald*; the question was stated to be "whether defendants, in good faith, had

reason to believe the procedures they followed satisfied ... due process requirements." 655 F.2d at 831. There was no discussion of *Adams* or any other decision that Walker might have relied on in 1974.

It may be that the plaintiffs were stigmatized by the public announcement of the grounds on which they were fired, but the issue for us is merely whether Walker, having been allowed by this court to "stigmatize" Adams in the same way a few months earlier, can be said to have violated the plaintiffs' clearly established constitutional rights. This court did not address the question in either of its previous decisions and we think the answer is "no." The denial of summary judgment is reversed with directions to enter judgment for the defendant.

BAUER, Chief Judge, dissenting.

I am unable to join Judge Posner's opinion because I believe that the appellees were, in fact, entitled to due process protections and that the defendant could reasonably be charged with knowledge of their right to a hearing at the time he acted. I do not differ with Judge Posner's articulation of the appropriate criterion for invoking qualified immunity; rather, I read the relevant case law as clearly establishing the plaintiff's right to due process under that standard.

In order to establish the defense of qualified immunity, an official must show that his conduct did not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Additionally, the law of this circuit, as well as others, has clothed this naked pronouncement with the vesture of particularity. Before a right is "clearly established" it must be "sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful." *Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir. 1986). This court's decision in *Adams v. Walker*, 492 F.2d 1003 (7th Cir.1974), decided months before Walker's firing of Colaizzi and Indovina, put the defendant on direct

notice that his conduct was indeed unlawful, as Walker himself was the defendant there.

In *Adams*, we delineated the type of public accusations accompanying a discharge which constitute a deprivation of "occupational liberty," sufficient to require due process protections. Adams was dismissed from his position as a member of the Illinois Liquor Control Commission by Governor Walker. In a publicly released telegram, Walker accused Adams of "incompetence, neglect of duty and malfeasance in office." *Id.* at 1004. A contemporaneous press release indicated that Adams was required to revoke eight liquor licenses of Western Concessions, Inc., instead of fining it for making political campaign contributions. The court determined that Walker had not deprived Adams of a liberty interest and therefore, owed him no due process protections.

In so finding, we emphasized the Governor's use of "talismanic" language intended only to satisfy the state constitutional requirement for terminating a state commissioner. The court also made a clear distinction between accusations of mere "incompetence, neglect of duty and malfeasance in office" (Judge Cummings characterized Walker's statements as the equivalent of " 'I am dismissing you because I think I can find a better liquor commissioner' ") and those involving "dishonesty, immorality, disloyalty, alcoholism or narcotics violations," which would engender due process protections. *Id.* at 1008–09.

In terminating Colaizzi and Indovina, Walker clearly exceeded the perfunctory language used in dismissing Adams. In two press releases Walker accused Colaizzi and Indovina of "wrongdoing" and "misconduct" while exhaustively detailing the "threat[s]" used by the two men in an attempt to influence Zenith officials. Finally, Walker directly implicated the appellees' honesty by stating that, "[t]here will always be a few bad apples, but the overwhelming number of state employees, in fact, the overwhelming number of all public employees are dedicated, *honest* hardworking people." (emphasis added).

These comments far exceed the "unelaborated" allegations of inability used in firing Adams. Instead, Walker's charges clearly fall within the category of accusations which the *Adams* court indicated were a deprivation of liberty. The court specifically identified accusations of dishonesty as requiring due process protections, and it cannot be seriously contended that Walker's statements did not infringe upon the appellee's honesty here.

I believe that a reasonable person would have known that the appellees were denied a clearly established right. Most of all, Walker should have known.