In re Peter M. ROBERTS.

Misc. No. 120.

United States Court of Appeals, Federal Circuit.

May 11, 1988.

---

John B. Davidson, Louis G. Davidson & Associates, Ltd., Chicago, Ill., argued for petitioner. Also on the brief were Charles Alan Wright, Austin, Tex., Geoffrey P. Miller, Chicago, Ill. and George H. Gerstman, Pigott & Gerstman, Chicago, Ill., of counsel.

James G. Hunter, Jr., Latham & Watkins, Chicago, Ill., argued for respondent. With him on the brief was Elpidio R. Villarreal. Also on the brief was Charles S. Treat, Latham & Watkins, of Los Angeles, Cal.

Before MARKEY, Chief Judge, FRIEDMAN,* RICH, DAVIS, SMITH, NIES, NEWMAN, BISSELL, ARCHER, MAYER, and MICHEL,* Circuit Judges, and BALDWIN, Senior Circuit Judge.

* FRIEDMAN, *Circuit Judge,* and MICHEL, *Circuit Judge,* took no part in the consideration or deci-

### ORDER

MARKEY, Chief Judge.

Peter M. Roberts (Roberts) petitions under 28 U.S.C. § 1651 for a writ of mandamus ordering the district court to (1) disobey a mandate and order for a new trial issued December 21, 1983 by the United States Court of Appeals for the Seventh Circuit; (2) reinstate a verdict returned on April 2, 1982; and (3) enter judgment for Roberts *nunc pro tunc* the date of that verdict, including a $5 million jury award and $3,190,254 increased damages with interest and prejudgment interest. Sears, Roebuck and Co. (Sears) moves to dismiss the petition for lack of jurisdiction in this court. We will grant the motion.

### Background

Protracted and extensive litigation between the parties is reflected in four decisions: *Roberts v. Sears, Roebuck & Co.,* 573 F.2d 976, 197 USPQ 516 (7th Cir.) (*Roberts I*), *cert. denied,* 439 U.S. 860, 99 S.Ct. 179, 58 L.Ed.2d 168 (1978); *Roberts v. Sears, Roebuck & Co.,* 617 F.2d 460, 205 USPQ 788 (7th Cir.) (*Roberts II*) *cert. denied,* 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980); *Roberts v. Sears, Roebuck & Co.,* 697 F.2d 796, 217 USPQ 675 (7th Cir.1983) (*Roberts III*); *Roberts v. Sears, Roebuck & Co.,* 723 F.2d 1324, 221 USPQ 504 (7th Cir.1983) (*Roberts IV*). In *Roberts III,* a panel of the Seventh Circuit viewed Roberts' patent as invalid and reversed the judgment entered on the verdict Roberts now seeks to reinstate. In *Roberts IV,* the Seventh Circuit sitting *en banc* vacated the decision in *Roberts III* and ordered a new trial.

Having greatly benefited from the decision in *Roberts IV,* Roberts nonetheless filed in this court on April 29, 1985 a first petition for the writ here sought. A panel of this court denied that petition on November 25, 1985, noting that Sears had raised "other grounds" that the district court might find sufficient to warrant a new trial. After the panel denied Roberts' petition for rehearing, and the district court declined to rule on those "other grounds," Roberts again petitioned for mandamus. The panel of this court granted the petition

sion of this case.

to the extent of ordering the district court to make the determination respecting other grounds, indicating that an affirmative determination would render the petition moot and would thus avoid any need for this court to decide the petition on its merits. When the district court, while noting the unusual nature of the procedure, determined that no additional ground warranted a new trial, Roberts filed the present petition.[1]

Sears suggested *in banc* determination of its motion to dismiss. This court accepted that suggestion, and *sua sponte* elected to consider the petition *in banc* if the motion were not granted.

### *Jurisdiction*

The mandamus statute, 28 U.S.C. § 1651, is not a grant of jurisdiction. *Rosenbaum v. Bauer*, 120 U.S. 450, 7 S.Ct. 633, 30 L.Ed. 743 (1887); *In re Innotron Diagnostics*, 800 F.2d 1077, 1081, 231 USPQ 178, 181 (Fed.Cir.1986); C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure*, § 3932, at 184–85 (1977). There must, therefore, be some other basis for jurisdiction before an appellate court may grant the particular writ sought by a petition for mandamus.

■ This court is a co-equal member of a system of thirteen appellate courts arranged in a single tier. It is not a superior or member possessed of jurisdiction to review and reverse the judgments of the other twelve. Roberts has not shown that this court has been granted jurisdiction to engage in appellate review or rehearing of a final decision, or to recall or countermand a mandate, of a coordinate court of appeals. Indeed, Roberts refuses fully to recognize that this court would have to have been granted such jurisdiction before it could grant the particular writ he seeks.

1. Roberts' persistence in attempting to overturn *Roberts IV* has been ant-like. In a petition for rehearing to the Seventh Circuit and in a motion thereafter filed in the district court, he made the attacks on *Roberts IV* he makes here. His petition and motion were denied.

2. Roberts does not discuss Section 403(e) and cannot assert that the Seventh Circuit lacked jurisdiction to issue its mandate in *Roberts IV.* Yet, Roberts seeks here to simply expunge all

Roberts makes no substantive response to Sears' motion to dismiss. He merely states, without more, that this court: (1) "has jurisdiction to hear a petition directed to a district court in a patent case;" (2) has "exercised jurisdiction in a preliminary way" over his earlier petitions; and (3) has "power to decide the question now presented to it by virtue of the All Writs Act." Roberts simply quotes the Act and notes the reference there to "all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). He then cites without discussion four cases, none of which involved a writ even remotely similar to the one sought here.

Roberts' difficulty is: (1) the *"patent case"* over which Roberts seeks to have this court exercise jurisdiction is finished and was exclusively within the jurisdiction of the Seventh Circuit; (2) neither order relating to Roberts' earlier petitions dealt with the question of jurisdiction; and (3) Roberts has pointed to no case over which this court would have jurisdiction "in aid of" which the particular writ he seeks would be "necessary or appropriate."

■ The judgment Roberts seeks to have this court reinstate is one from which a notice of appeal was filed before October 1, 1982, and over which the Seventh Circuit had and has exercised exclusive jurisdiction. Federal Courts Improvement Act of 1982, Pub.L. 97–164, § 403(e), 96 Stat. 25, 58. That judgment was reviewed entirely in accord with the statute. This court's jurisdiction is limited under Section 403(e) to review of judgments in relation to which a notice of appeal is filed after October 1, 1982. *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1580, 220 USPQ 490, 495 (Fed.Cir.1983). Nothing whatever in the statute creating this court gave it jurisdiction to reach back and redo anything done by a coordinate court of appeals. On the contrary, Congress expressly foreclosed such action by this court in Section 403(e).[2]

that was done after the verdict he seeks to reinstate—the judgment, the notice of appeal, the panel decision in *Roberts III,* and the *en banc* decision in *Roberts IV.* Roberts' brief says, without citation of authority, that, if the jury verdict of April 2, 1982 is reinstated, Sears could then appeal to this court, and this court could, if it found error, order a new trial. Apart from the inappropriateness of treating the judgment entered on the verdict, the pre-October 1982 notice of appeal, and the Seventh Circuit's

If the district court conducts a new trial, this court would have jurisdiction over any appeal from a judgment entered after that trial. That is a mere possibility, however, and is irrelevant here. Roberts raises no issue involving a new trial and does not here seek a prospective remedy in respect of a new trial; he seeks the retroactive remedy of *avoiding* a new trial altogether. Similarly, the particular writ sought by Roberts would have nothing to do with the conduct of any trial or affect any judgment over which this court would have appellate jurisdiction. Granting the writ he asks, therefore, could not possibly aid our jurisdiction. On the contrary, the particular writ sought by Roberts would deprive this court of any such opportunity by foreclosing a trial and judgment in relation to which a proper post-October 1982 notice of appeal might be filed.

■ The incongruity of Roberts' notion that this court has jurisdiction to order disobedience to the Seventh Circuit's mandate to conduct a new trial if Roberts wants one is illustrated by the intolerable result of any such order. Unlike the authority to reconsider its *own* rulings, a district court is without choice in obeying the mandate of the appellate court. Roberts ignores the compulsory nature of the Mandate Rule. *See Northern Helex Co. v. United States*, 634 F.2d 557, 560, 225 Ct.Cl. 194 (1980) and cases there cited. In suggesting that the potential for appeal to a different court modifies the Mandate Rule in some unspecified way, Roberts ignores the holding in *United States v. United States Dist. Court*, 334 U.S. 258, 264–65, 68 S.Ct. 1035, 1038, 92 L.Ed. 1351 (1948) (appellate court mandate compulsory on district court, even though subsequent appeal would go directly to Supreme Court).[3]

If this court were to issue the order Roberts seeks, that order would confront the district court with a direct and intolerable conflict between two orders, one of which it must disobey. It would also constitute an unauthorized interference by this court with the duty of the district court to comply with the duly issued mandate of the Seventh Circuit, a mandate that court has not recalled. Neither this nor any circuit court other than the Court of Appeals for the Seventh Circuit has been granted jurisdiction to recall the mandate issued in *Roberts IV*.

Accordingly, IT IS ORDERED:

That the petition for mandamus be dismissed.

DAVIS, Circuit Judge, with whom SMITH, Circuit Judge, joins in part, dissenting in part.

I would hold that (i) this court has jurisdiction to consider Roberts' mandamus petition but (ii) I would deny that petition because of its lack of merit. In that sense I concur in the result of Chief Judge Markey's order.

## I. *Jurisdiction*

For me the most significant factor is that in *Roberts IV* the Seventh Circuit did not finally decide the case but rather ordered a new trial. Everyone agrees that the judgment entered after that new trial will be appealable only to this court. Section 403(e) of the Federal Courts Improvement Act limiting this court's jurisdiction to a notice of appeal filed after October 1, 1982, will not apply because the judgment after the new trial ordered by the Seventh Cir-

---

decision and mandate in *Roberts IV* as nullities, Roberts' suggestion conflicts with his plea that the order for a new trial denies him his Seventh Amendment right to [his first] jury trial and adds to his expense. However understandable and sympathy-provoking may be that plea, it is one that can be made by every litigant in response to every order for a new jury trial. As the panel of this court said in its November 25, 1985 order: "Any conflict between the law of this court and what the trial court does in the course of a new trial can be rectified, if necessary, when and if an appeal is taken to this court." Roberts' desire to avoid a new trial is commonplace among trial victors ordered back

to the fray by a court of appeal, but it cannot serve as a grant of jurisdiction or basis for mandamus. *See In re International Medical Prosthetics Research Assocs.*, 739 F.2d 618, 620 (Fed.Cir.1984) (refusal to grant petition did not frustrate this court's jurisdiction over final judgment on the merits).

3. Roberts expressly concedes that the district court is under a "non-discretionary duty" to comply with the Seventh Circuit's mandate and to conduct a new trial, yet argues, incongruously, that such absence of discretion is a basis for granting his petition.

cuit will necessarily be entered after that date. The statute authorizing us to issue a writ of mandamus, 28 U.S.C. § 1651, gives us the authority to issue "all writs necessary or appropriate in aid of [our] respective jurisdiction[s]." In appropriate circumstances, it would be in aid of our potential appellate jurisdiction to consider the rules by which the new trial is to be held. If, for instance, the only ground for the Seventh Circuit's reversal and ordering of a new trial in *Roberts IV* had been that it was error to allow the jury to consider the legal issue of obviousness, I would consider this at least a proper case to consider mandamus because that ruling is *directly* contrary to holdings of this court—and accordingly the new trial (ordered by the Seventh Circuit but the appeal of which could come only to us) would be governed by a rule we have held erroneous. The question would then be whether we should issue any order of mandamus or not (not necessarily all that Roberts asks).

## II. *Merits*

I would deny the petition on its merits because that rule (that the issue of obviousness cannot be left to the jury) was (a) not the only ground of the Seventh Circuit's reversal and directive to hold a new trial, and (b) the other grounds were not contrary to any ruling of this court or plainly erroneous. These other grounds (discussed in *Roberts IV*) were that (a) the jury was asked, without adequate instructions, to interpret the scope of the claim; (b) the instructions did not call upon the jury to find specific facts bearing on obviousness *vel non;* and (c) the so-called special interrogatories were not really such. None of these three other grounds was directly contrary, in the particular circumstances of the *Roberts* case, to any decision of this court, nor were any of them clearly wrong. Accordingly, we cannot say that the doctrine of law of the case is inapplicable or that there is here any warrant for setting aside the holding of the Seventh Circuit that a new trial be held because of those errors. Our past decisions follow earlier rulings of the regional circuits (in the same patent case) in comparable circumstances. *See, e.g., Central Soya Co. v. Geo. A. Hormel & Co.,* 723 F.2d 1573, 1580–81, 220 USPQ 491, 495 (Fed.Cir.1983); *Kori Corp. v. Wilco Marsh Buggies & Draglines,* 761 F.2d 649, 657, 225 USPQ 985, 990 (Fed.Cir.) *cert.* *denied,* 474 U.S. 902, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985).

BALDWIN, Senior Circuit Judge, dissenting in part.

I disagree with the majority's decision to the extent that it finds that this court lacks jurisdiction to consider Roberts' mandamus petition. I believe, however, that the writ should not issue under the facts presented, and thus concur in the result.

The majority holds that this court lacks jurisdiction to consider the petition because "there is as yet no 'patent case' over which this court has either present or prospective jurisdiction," and "Roberts has pointed to no case over which this court would have jurisdiction 'in aid of' which the particular writ he seeks would be 'necessary or appropriate.'" In my view, this statement reflects a misunderstanding of the application of the All Writs Act, 28 U.S.C. § 1651 (1982) and the Supreme Court's interpretation of it. *See Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *LaBuy v. Howes Leather Co.,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957).

The Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Court in *LaBuy* discussed the power of the courts of appeals to issue writs of mandamus, and concluded that the power to issue writs exists where an appeals court has either present or prospective jurisdiction. 352 U.S. at 254–55, 77 S.Ct. at 312–13. In *LaBuy,* the petitioner sought a writ ordering the district court judge to vacate his reference of antitrust cases to masters. The Supreme Court upheld the court of appeals' exercise of this discretionary power stating: "Since the Court of Appeals could at *some* stage of the antitrust proceedings entertain appeals in these cases, it has the power in proper circumstances, as here, to issue writs of mandamus reaching them." *Id.* at 255, 77 S.Ct. at 313. (Emphasis added). It was not until after the determination that the court of appeals had jurisdiction to issue the writ that the Court addressed whether the writ should be granted. *Id.*

In two later cases, *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964) and *Will v. United States*, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), the Court, while tightening the standards for supervisory mandamus, continued to recognize the propriety of its use in aid of potential jurisdiction. *See also Kerr v. United States District Court*, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976).

The majority rejects jurisdiction to issue the writ because it says that there is no patent case in existence over which this court has potential jurisdiction. The majority then states that it is irrelevant that this court will have jurisdiction over an appeal from a judgment entered after a new trial. I cannot agree with these assertions. The fact that the Federal Courts Improvement Act, Pub.L. 97–164, § 403, 96 Stat. 25 (1982), vests jurisdiction in this court of any appeal from a judgment in the new trial is more than a mere passing event. In my opinion, this is just the sort of prospective appellate jurisdiction envisioned by the Supreme Court in *LaBuy*. Interpreting the concept of prospective appellate jurisdiction to exclude this circumstance is, I believe, unduly restrictive, and not in accord with the intent of the All Writs Act to provide a means for appellate courts to use this discretionary power where appropriate.

This court has recently affirmed its position that the All Writs Act is not an independent grant of appellate jurisdiction. *In re Innotron Diagnostics*, 800 F.2d 1077, 1081, 231 USPQ 178, 181 (Fed.Cir.1986). But, this proposition does not act to refute an exercise of appellate jurisdiction in aid of prospective jurisdiction, especially, where, as here, that prospective jurisdiction is guaranteed by statute and by the fact that the Seventh Circuit's role in the case has terminated. By rejecting jurisdiction, the majority incorrectly assumes that the judgment of the Seventh Circuit was a final disposition of Roberts' case. In reality, however, the Seventh Circuit's decision to grant Roberts a new trial creates precisely the prospective jurisdiction which the Supreme Court has held to be sufficient to exercise mandamus authority. The majority's decision rejects *jurisdiction* to issue the writ because the writ requested is not one we should grant. I consider jurisdic-

tion to issue the writ a separate issue from the decision whether to grant the writ. *See LaBuy*, supra.

In rejecting jurisdiction, the majority suggests that because Roberts does not request relief relating to the new trial, but instead seeks a writ avoiding a new trial, this court is precluded from considering the writ. This logic confuses the merits of the writ with the jurisdiction to hear the petition. The fact that it would be inappropriate for this court to issue a writ which would, in effect, overrule the Seventh Circuit's mandate, is not a jurisdictional matter. Rather, this question should be addressed in the court's refusal to issue such a writ, since this court clearly possesses prospective appellate jurisdiction. Because the majority erroneously confuses the question of jurisdiction with the advisability of granting the writ, I respectfully dissent from that portion of the majority opinion which holds that this court lacks jurisdiction to consider Roberts' petition.

Having determined that the court possesses jurisdiction to issue a writ of mandamus in this case, I would nonetheless deny the relief which Roberts requests. The All Writs Act confers on this court great discretion in deciding whether to grant a particular writ. However, the Supreme Court has cautioned us against issuing such writs in all but the most exceptional circumstances. *LaBuy*, 352 U.S. at 256–58, 77 S.Ct. at 313–15. I agree with the majority's conclusion that issuing a writ of mandamus ordering the district court to reinstate the original jury verdict is an unwise action from which we should refrain. Consideration of the mandate rule, *United States v. United States District Court*, 334 U.S. 258, 68 S.Ct. 1035, 92 L.Ed. 1351 (1948), the doctrine of the law of the case, *Jamesbury Corp. v. Litton Industrial Products, Inc.*, 839 F.2d 1544, 1550, 5 USPQ 2d 1779, 1783 (Fed.Cir.1988) (doctrine should be applied "more or less strictly depending on the circumstances of the case"), and the fact that mandamus should not be used as a substitute for appeal, *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943), dictate that we reject the relief sought by Roberts. It would certainly constitute an abuse of this court's discretion to act against these considerations solely to avoid the expense and

inconvenience of a new trial. It requires excessive speculation to conclude that denying Roberts' request will result in not one, but two new trials. In any event, the Supreme Court recognized in *Roche* that "that inconvenience is one which we must take it Congress contemplated in providing that only final judgments should be reviewable." 319 U.S. at 30, 63 S.Ct. at 943.

NEWMAN, Circuit Judge, dissenting.

The Court of Appeals for the Seventh Circuit has ordered a new trial as the next step in the saga of Peter M. Roberts and Sears, Roebuck & Co., litigation that began in 1969 based on a patent that issued in 1965 and expired in 1982. In 1983 the Seventh Circuit vacated a jury verdict in Roberts' favor, the Circuit applying procedural law and practice that diverge from that enunciated by the Federal Circuit. *Roberts v. Sears, Roebuck & Co.*, 723 F.2d 1324, 221 USPQ 504 (7th Cir.1983) (en banc) (Roberts IV).[1]

The District Court for the Northern District of Illinois, to which the case was remanded, was ordered by the Seventh Circuit to conduct the new trial "in accordance with this opinion". *Id.* at 1344, 221 USPQ at 522. The district court has recognized its obligation to obey that mandate. *Roberts v. Sears, Roebuck and Co.*, No. 80–C–5986, order at 5–9 (N.D.Ill. Jan. 14, 1985) (holding that the district court has no au-

thority to reconsider the ruling of the Seventh Circuit, which is the law of the case).

The district court lacks authority to diverge from that mandate; *see Gindes v. United States*, 740 F.2d 947, 949 (Fed.Cir.) (" 'once a case has been decided on appeal, the rule adopted is to be applied, right or wrong, absent exceptional circumstances, in the disposition of the lawsuit' ") (quoting *United States v. Turtle Mountain Band of Chippewa Indians*, 612 F.2d 517, 520, 222 Ct.Cl. 1 (1979)), *cert. denied*, 469 U.S. 1074, 105 S.Ct. 569, 83 L.Ed.2d 509 (1984). In this case, however, the "exceptional circumstances" are present, as one of the classical exceptions to the doctrine of the law of the case. Thus the circuit court, including this court as successor to the Seventh Circuit, has authority to grant Roberts' petition to the extent of ordering that Federal Circuit law shall apply in any new trial.

Such order is necessary in view of the Seventh Circuit's clear contrary mandate, and the district court's refusal to depart therefrom. Indeed, the district court rejected Roberts' request for leave to take an interlocutory appeal, stating that its order "involved a straightforward application of the mandate rule". *Roberts v. Sears, Roebuck and Co.*, No. 80–C–5986, order at 1 (N.D.Ill. April 10, 1985).

The law and procedure that the Seventh Circuit ordered the district court to follow on retrial differ in several ways from the law and procedure since established by the Federal Circuit.[2] Although one may de-

---

1. The decision was issued after the formation of the Federal Circuit, although the appeal was correctly before the Seventh Circuit, having been filed before October 1, 1982. Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 403(e), 96 Stat. 25, 58 (1982).

2. The Seventh Circuit held that the questions of anticipation and obviousness can not be decided by the jury; we do not so hold. The Seventh Circuit held that anticipation is a question of law; we have consistently held otherwise. The Seventh Circuit allowed obviousness to be shown by a preponderance of evidence; we require clear and convincing evidence. The Seventh Circuit issued precise orders as to how the jury trial must be run on remand:

> [T]he jury *must* be instructed that if it finds facts A, B, C and D, it *must* render a certain verdict. Anything less than strict adherence to this procedure by a trial court constitutes

an abdication of its active duty to retain ultimate control over the issue of obviousness. [emphasis added, footnote omitted]

*Roberts*, 723 F.2d at 1341, 221 USPQ at 519. However, even the Seventh Circuit, in the *Panther Pumps* case relied on in *Roberts IV*, recognized that such an instruction could be unworkable, and authorized the trial judge to exercise discretion:

> When only two or three narrow issues of fact, such as the date of invention or perhaps the date of first public sale, determine the issue of patent validity, it may be entirely appropriate to submit special interrogatories to the jury. But if, as in this case, one party contends that as many as 32 separate fact questions must be resolved, the trial judge certainly may consider it inappropriate to use the special interrogatory procedure.

*Panther Pumps & Equipment Co. v. Hydrocraft, Inc.*, 468 F.2d 225, 228, 175 USPQ 577, 579 (7th

bate the significance of these differences, they were the bases on which the Seventh Circuit vacated Roberts' jury verdict and required a new trial; thus they can not be considered *de minimus*. Further, this trial court is now bound by rules and instructions to which no other court trying patent cases is bound.

On this background, I would not refuse the simple clarification that would allow the case to go forward on a correct, rather than an incorrect, basis. Such response is in aid of our jurisdiction,[3] would conserve judicial resources, and advance resolution of the dispute between the parties. Thus I respectfully dissent from this court's decision that the Federal Circuit has neither jurisdiction nor authority to "interfere", in response to the mandamus petition before us, until after the new trial is held (or, at best, until leave for interlocutory appeal is granted).

As the designated appellate tribunal, exercise of our authority will not result in a "conflicting" mandate, to use the majority's word. The issue is neither of conflict nor of comity. We have succeeded the Seventh Circuit in patent cases. Seventh Circuit patent law is extinct[4]; it has no role in ongoing litigation, *unless* it has law of the case viability. Our responsibility as successor appellate authority is to determine the law of the case viability of the order controlling Roberts' mandated new trial.[5]

The issue at bar is not whether an appellate tribunal's mandate is binding upon the trial court. The issue is whether an appel-

late court, or a successor appellate court, has the power to supercede the prior command, and under what circumstances. The Supreme Court has stated that the law of the case doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power". *Messenger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912). The Seventh Circuit described it as a "self-imposed prudential limitation rather than a recognition of a limitation of the courts' power". *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 532 (7th Cir. 1982), *cert. denied*, 459 U.S. 1226, 103 S.Ct. 1233, 75 L.Ed.2d 467 (1983).

There is substantial jurisprudence dealing with law of the case doctrine when the controlling law changes between an appellate court's decision and the further proceedings in the trial court. *See, e.g., Colaizzi v. Walker*, 812 F.2d 304, 310 (7th Cir.1987) ("an intervening change of law is a familiar reason for refusing to apply the law of the case doctrine"); *Amen v. City of Dearborn*, 718 F.2d 789, 794 (6th Cir.1983):

> the [law of the case] doctrine is not so rigid as the rule of res judicata, and there is a well-recognized exception that the doctrine must yield to an intervening change of controlling law between the date of the first ruling and the retrial. [citations omitted]

*cert. denied*, 465 U.S. 1101, 104 S.Ct. 1596, 80 L.Ed.2d 127 (1984). *See also Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 657, 225 USPQ 985, 990 (Fed.Cir.), *cert. denied*, 474 U.S.

---

Cir.1972), *cert. denied*, 411 U.S. 965, 93 S.Ct. 2143, 36 L.Ed.2d 685 (1973). The difficulties of implementation in even moderately complex patent litigation are apparent, where there may be dozens or hundreds of fact questions underlying the various questions of law.

3. Congress left it to the courts to smooth the transition to the Federal Circuit, and to resolve questions in the way that best implements the intent of the legislation. *See Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1434, 223 USPQ 1074, 1083 (Fed.Cir.1984) ("In designing jurisdictional guidelines it is our duty, if possible, to implement all, not just some, of Congress' intents.")

4. See *South Corp. v. United States*, 690 F.2d 1368, 215 USPQ 657 (Fed.Cir.1982), wherein the Federal Circuit adopted as precedent only the

decisions of the Court of Customs and Patent Appeals and the Court of Claims.

5. Our consideration of the law of the case would not surprise the Seventh Circuit. Judge Posner wrote in dissent:

> [I]f the judgment entered by the district court on remand from this court is appealed the appeal will not come back to us but will go to another court [the Federal Circuit], which no doubt will have its own ideas about this interesting case. (I will not speculate on the applicability of the law of the case doctrine in this unusual situation, or on whether if it is applicable it would have any bite in view of the lack of definiteness in the legal standard which this court has laid down in its opinion.)

*Roberts*, 723 F.2d at 1348, 221 USPQ at 525.

902, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985) (recognizing three standard exceptions to the law of the case doctrine, including intervening change of law).

Professor Moore speculated on the somewhat analogous situation wherein a case is transferred by a circuit court to a district court in a sister circuit:

Pre-transfer appellate decisions establish the law of the case, and normally the second court of appeals should follow it. Whether the duty to follow the foreign decision is more absolute than the duty to follow the law of the case as established by a local panel in a prior appeal is questionable. Again departures occur so infrequently that comparisons are impossible. [footnotes omitted]

*Moore's Federal Practice,* ¶ 0.404[4.—5] at 138. *See also Christianson v. Colt Industries Operating Corp.,* 798 F.2d 1051, 1056, 230 USPQ 840, 845 (7th Cir.1986) (law of the case "should not foreclose reconsideration of the decision of the Federal Circuit ordering a transfer of the instant appeal to this court").

Although it is clear that the supervening law should be applied in the subsequent proceeding, such application is far from automatic. When a district court has been expressly bound by an appellate court's mandate to apply the superseded law, it is conventional for an appellate court to relieve the trial court of its obligation. The question has arisen in a variety of contexts; *e.g., In re Union Nacional de Trabajadores,* 527 F.2d 602 (1st Cir.1975) (district court refused, despite an intervening Supreme Court decision, to depart from the circuit court's order to grant a jury trial in a criminal contempt proceeding, until so instructed by the circuit court and withdrawal of the mandate); *Amen v. City of Dearborn,* 718 F.2d at 793 (district court on remand applied intervening change in statute of limitations without violating the mandate because mandate not explicit as to how the statute was to be applied); *Luminous Unit Co. v. Freeman–Sweet Co.,* 3 F.2d 577 (7th Cir.1924) (describing law of the case as "not an inexorable rule", upholding district court's vacation of a judgment that had been previously affirmed on appeal, based on an intervening Supreme Court decision).

In the case before us, as in *Union Nacional,* the district court has declined to depart from the circuit court's order; any further order is the responsibility of the circuit court. Such responsibility devolves upon the Federal Circuit, as successor to the Seventh in this matter. Thus it is not material that the appeal in *Roberts IV* was filed before October 1, 1982 and was properly before the Seventh Circuit. Our concern is for the continuing proceeding, and for the law that is to be applied in a case for which we have sole appellate responsibility.

Professor Moore remarked, "Surely the court of appeals should not hesitate to correct a patent error in a still live case". *Moore's Federal Practice* ¶ 0.404 [4.—5] at 139 n. 9. This court's reluctance to make a simple clarifying statement is difficult to justify, when one considers the ease of settling the matter now before us, balanced against the time, resources, and energy that an erroneous trial would consume on the part of courts and litigants. *See Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 87 (2d Cir.1961) ("The right not to have to relitigate an issue [needlessly] is as much entitled to extraordinary protection [by writ of mandamus] as the right to jury trial"), *cert. denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962). By rejecting both authority and opportunity to respond to Roberts' petition, we do not fulfill our obligation to achieve consistency in patent law and practice. Thus, I would grant Roberts' petition to the extent of holding that the district court shall apply Federal Circuit law in all further proceedings.