**Dennis HARRIS, Plaintiff,**

v.

**William C. "Bud" JOHNSON, Defendant.**

**No. 89 C 9078.**

United States District Court, N.D. Illinois, E.D.

Dec. 13, 1989.

Opinion on Counsel's Memorandum in Support of Complaint Dec. 28, 1989.

---

Michael S. Baird, Stotis, Chionis, Craven & Baird, Chicago, Ill., for plaintiff.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Dennis Harris ("Harris") has just sued William "Bud" Johnson ("Johnson") under 42 U.S.C. § 1983 ("Section 1983"), charging Harris' constitutional rights were violated when he was fired as Chief of Police for the City of Plano. Based on its initial review of Harris' Complaint,[1] this Court sua sponte directs his counsel to address the obvious threshold problem presented by his claim as asserted.

Harris complains that Johnson (Plano's Mayor[2]) discharged Harris from his post as Chief of Police (Complaint ¶ 14), then explained the charges against Harris to a closed meeting Johnson held with the Plano City Council (Complaint ¶¶ 16–19). Harris invokes federal jurisdiction under Section

---

1. This Court always undertakes an immediate review of newly-filed complaints; see *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir.1986):

    The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged.

2. Although Johnson's office is not identified in the Complaint itself, it is reflected in the Octo-

ber 6, 1989 letter from Johnson to Harris referred to in Complaint ¶ 15. Unfortunately Harris' lawyer originally omitted to attach that letter as Exhibit A to the Complaint (as Complaint ¶ 15 said had been done). At this Court's request counsel has now completed the intended filing by delivering copies of the October 6 letter to the Clerk's Office and this Court's chambers.

1983 on the basis that Johnson's action deprived Harris "of a Fourteenth Amendment liberty interest without due process of law" (Complaint ¶ 3).

Because Harris does not assert deprivation of a *property* interest as the result of his firing, the only reasonable inference from the Complaint is that his service as Chief of Police was entirely at will, rather than a tenured position (see, e.g., *Jungels v. Pierce*, 825 F.2d 1127, 1130 (7th Cir.1987) and cases cited there).[3] That being the case, the Section 1983 jurisprudence as to such property deprivations does not come into play.[4] Instead Harris' hope for federal jurisdiction and federal relief must look to *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) and its progeny.

■ But the *Paul v. Davis* message is crystal-clear: Liberty deprivations via job terminations must rest on "stigma plus" to be actionable under Section 1983 (*id.* at 701–10, 96 S.Ct. at 1160–65; and see, e.g., among the many cases following *Paul v. Davis* in explicating and applying that doctrine, *Bone v. City of Lafayette, Ind.*, 763 F.2d 295, 297–99 (7th Cir.1985)). And all Harris alleges here (Complaint ¶¶ 21–23) is the sort of generalized "stigma" that likely attaches to *every* individual who is discharged from a job such as the one Harris held. Indeed, Harris actually negates the type of fact pattern that under the case law may provide or may lead to the "plus" required by *Paul v. Davis:* a defamation linked with firing that effectively forecloses the employee from *future* employment—and thus constitutes a deprivation of *that* liberty interest (see *Larry v. Lawler*, 605 F.2d 954, 958 (7th Cir.1978)). Here not only was the entire discussion about the charges against Harris conducted at a

nonpublic meeting, but any documents setting out those charges were destroyed by shredding (Complaint ¶ 20).

Accordingly Harris' Complaint appears to carry its own death warrant in Section 1983 terms. Unless on or before December 27, 1989 Harris files in this Court's chambers an Amended Complaint (or a memorandum in support of the existing Complaint) setting forth a viable basis for proceeding in this federal forum, this action will be dismissed forthwith for lack of subject matter jurisdiction.[5]

## MEMORANDUM OPINION AND ORDER

### ON COUNSEL'S MEMORANDUM IN SUPPORT OF COMPLAINT

This Court's December 13, 1989 memorandum opinion and order (the "Opinion") focused the attention of counsel for Dennis Harris ("Harris") on what Opinion at 847 termed "the obvious threshold problem presented by [Harris'] claim as asserted" against William "Bud" Johnson ("Johnson") under 42 U.S.C. § 1983 ("Section 1983"). Harris has chosen one of the two alternatives suggested by Opinion at 848 —his counsel has filed a Memorandum in Support of Complaint.[1]

■ But Harris' counsel has missed entirely the thrust of both the Opinion and the case law it drew to counsel's attention. Counsel says this in Harris' Memorandum at 1, 2–3 (citations omitted):

Specifically, it is Plaintiff's contention that HARRIS was denied his liberty to follow his trade or profession by his firing, the circumstances of which were highly secretive and kept private causing massive speculation of impropriety, thus

---

3. No Complaint allegation even hints at the factual underpinning necessary to create such a property interest.

4. Even that area of the law has now begun to evolve adversely to those fired from governmental positions—see *Thornton v. Barnes*, 890 F.2d 1380 at 1388–90 (7th Cir.1989).

5. Such a dismissal would of course be without prejudice to Harris' assertion, in a court of

competent jurisdiction, of any state law claim he may have.

1. Harris' other alternative was to file an Amended Complaint to fill the void identified in Opinion at 848. Because his counsel has not done so, it is obvious that the inference drawn in the Opinion—that Harris had no *property* interest in the Chief of Police position—was accurate.

creating a "stigma plus" which is actionable under Section 1983.

\*     \*     \*     \*     \*     \*

In the present case, HARRIS was the Chief of Police for the City of Plano for approximately seven years. The mayor, JOHNSON, notified HARRIS that he would be fired prior to covening [sic] a closed door meeting of the City Counsel [sic]. This meeting was termed "unorthodox" by local publications. The City Counsel upheld the firing after charges were disseminated to various Counsel members. A document which was later prepared to be released to the press outlining the charges was destroyed in addition to all notes and minutes of the "unorthodox" closed door meeting. The hiding of charges along with JOHNSON'S consistent response of "no comment" to the press has caused massive speculation in the community that HARRIS' official conduct was improper and unlawful. JOHNSON'S conduct has caused this massive speculation among the community and the press. More importantly, JOHNSON'S conduct has made it impossible for HARRIS to find suitable employment elsewhere.[2]

■ That turns the "stigma-plus" doctrine adverted to in the Opinion squarely on its head. Where a liberty and not a property interest in employment forms the gravamen of a Section 1983 claim, the essential "stigma" component must take the form of a *public statement* of the grounds that have triggered the plaintiff's firing from his public employment. Harris' counsel has done some limited research in this area of law beyond the cases cited in the Opinion as exemplifying the doctrine, but that research just did not go far enough: Although one case that counsel cites is *Colaizzi v. Walker*, 542 F.2d 969 (7th Cir. 1976), further recourse to either Shepard's or LEXIS or Westlaw would have led counsel to the later opinion in *Colaizzi v. Walker*, 812 F.2d 304 (7th Cir.1987), which spells the matter out chapter and verse and explains exactly why Harris does *not* have a viable Section 1983 claim. Rather than attempting to restate *Colaizzi*, this Court simply reproduces 812 F.2d at 307 as an Appendix to this opinion.[3]

■ Johnson's conduct in *avoiding* publicity as to the reasons for Harris' firing— Johnson's consistent response of "no comment" to all inquiries on that score—conclusively negates, rather than establishing, the purported Section 1983 claim. That is the message that Opinion at 848 sought to deliver, but Harris' counsel have simply failed to recognize it.

■ Where as here the claim is so wanting in an essential ingredient for federal jurisdiction, dismissal for lack of subject matter jurisdiction is the proper course. This action is dismissed on jurisdictional grounds.[4]

2. It is of course inappropriate to buttress a complaint by a legal memorandum—any factual allegations on which a party seeks to rely should be advanced by a *pleading* and not via the lawyer's *argument* (see *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). But just as this Court did in *Car Carriers, Inc. v. Ford Motor Co.*, 561 F.Supp. 885, 886–87 & n. 2 (N.D.Ill.1983), it has considered the additional assertions advanced by Harris only because it is about to dismiss this action for lack of subject matter jurisdiction and wishes to make it plain that the defect is truly incurable—a fatal disease—and not just a matter of insufficient pleading.

3. Of course *Colaizzi* is not alone—it simply lays the matter out most cogently. Accord, such cases as *Jungels v. Pierce*, 825 F.2d 1127, 1130 (7th Cir.1987) (emphasis added) ("dismissal to the accompaniment of serious *public* charges of

misconduct") and the case specifically directed to counsel's attention in Opinion at 848, *Bone v. City of LaFayette, Indiana*, 763 F.2d 295, 298 (7th Cir.1985) (emphasis added), which states plainly (in language that, astonishingly enough, Harris' counsel quotes at Mem. 4 but then ignores entirely):

> The combination [that has been labeled "stigma-plus"] arises most frequently when an employee is discharged by a government employer; should the government agency at the same time *publicly* defame the employee, he may be deprived of a liberty interest: the interest in the possibility of future employment in his profession.

4. No views are expressed or implied here, of course, as to whether Harris might have a valid *state law* claim against Johnson, assertable in a state court of competent jurisdiction.

APPENDIX

COLAIZZI v. WALKER

812 F.2d 304 at p. 307 (7th Cir.1987)

■ The public employee's constitutional right not to be fired on "stigmatizing" grounds is one of the more mysterious innovations in modern constitutional law. Reputation is not "property" or "liberty" within the meaning of the due process clauses of the Fifth and Fourteenth Amendments. *Paul v. Davis*, 424 U.S. 693, 711–12, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976). If it were, defamation by a public official would be a federal tort, which no one believes. It seems odd that merely because a defamatory statement (not a deprivation of liberty) is coupled with firing an employee-at-will (not a deprivation of property), the public official is guilty of a federal tort. It sounds like the legal equivalent of $0 + 0 = 1$. One might have thought that the only significance of the firing would be to make it easier for the victim to prove damages in a suit in state court for defamation, assuming he wasn't promptly hired in an equally good job.

■ To understand the tort you must go back to its origins (discussed in *Board of Regents v. Roth*, 408 U.S. 564, 573–74, 92 S.Ct. 2701, 2707–08, 33 L.Ed.2d 548 (1972)) in cases where public employees were fired for suspected Communist sympathies. See, e.g., *Joint Anti–Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 185, 71 S.Ct. 624, 655, 95 L.Ed. 817 (1951) (Jackson, J., concurring). In the atmosphere of those times, employees fired on such grounds found it difficult to land equally responsible jobs, public or private. The circumstances of discharge, at least if they were publicly stated, had the effect of blacklisting the employee from employment in comparable jobs. If a state or the federal government formally banned a person from a whole category of employment, it would be infringing liberty of occupation—a component of the liberty that the due process clauses of the Fifth and Fourteenth Amendment protect, and recognized as such almost since the beginning of this nation. See *Bigby v. City of Chicago*, 766 F.2d 1053, 1057 (7th Cir.1985). If it did this

without due process of law, therefore, it would be violating the Constitution. By firing a worker on publicly stated grounds that kill his chances for further employment in his chosen occupation, the government in effect excludes him from that occupation, and thus deprives him of liberty in a Fourteenth Amendment sense, and thus must give him due process of law. See *id.*, *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1138–39 (7th Cir.1984).

That the interest protected is occupational liberty rather than reputation was made reasonably clear by *Paul v. Davis, supra*, which held that reputation is not property or liberty in the constitutional sense. Some cases continue to suggest that defamation coupled with firing is a deprivation of liberty, see, e.g., *Perry v. FBI*, 781 F.2d 1294, 1300 (7th Cir.1986) (en banc); but since neither reputation nor government employment at will is an aspect of the liberty (or property) protected by the Fifth and Fourteenth Amendments, these cases are better explained as holding that to fire a worker to the accompaniment of public charges that make it unlikely that anyone will hire him for a comparable job infringes his liberty of occupation. See *Goulding v. Feinglass*, 811 F.2d 1099, 1102–03 (7th Cir. 1987).