Randall S. GOULDING,
Plaintiff-Appellant,

v.

Irving FEINGLASS and Irwin Solomon,
Defendants-Appellees.

Randall S. GOULDING,
Plaintiff-Appellant,

v.

Thomas DIETZ, Defendant-Appellee.

No. 85-2783.

United States Court of Appeals,
Seventh Circuit.

Argued May 13, 1986.

Decided Feb. 4, 1987.

Rehearing and Rehearing En Banc
Denied March 13, 1987.

---

1. It might be fairer just to adopt the English rule and say, "If you lose, you pay."

John W. Cooley, Evanston, Ill., for plaintiff-appellant.

Mary Frances Clark, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before WOOD, COFFEY and FLAUM, Circuit Judges.

COFFEY, Circuit Judge.

Randall S. Goulding appeals the decision of the district court dismissing his lawsuit against employees of the Internal Revenue Service for want of federal jurisdiction and the district court's denial of his motion for leave to amend his complaint. We affirm.

## I

This case involves a claim by Randall S. Goulding, the plaintiff-appellant, that Irving Feinglass, Irwin Solomon and Thomas Dietz (defendants-appellees) as employees of the Internal Revenue Service ("I.R.S.") violated his constitutional rights in conspiring to destroy his practice as a lawyer. Goulding is an attorney with a practice in the Chicago metropolitan area. The focus of the plaintiff's practice is primarily in tax law, and he specializes in advising his clients on limited partnerships and building tax shelters. Prior to entering the private practice of law, he was employed by the I.R.S. as a Special Agent and Revenue Agent from 1972 to 1978.[1]

Two of the defendants-appellees, Dietz and Feinglass, are employed as agents in auditing and investigatory work in a Chicago office of the I.R.S. The plaintiff formerly worked in the same office. Solomon is a supervisory revenue agent whose duties include supervising the work of the defendants Dietz and Feinglass and assigning income tax return investigations to agents.

The plaintiff claims he first met the defendant Dietz in 1973 while both of them were employed with the I.R.S. in Chicago and Feinglass in 1981 when Feinglass was investigating an entity Goulding represented.

During the past several years Feinglass and Dietz have conducted investigations of several of Goulding's clients involved in limited partnerships.[2] Goulding claims in

---

1. Special Agents investigate charges of criminal and civil violations of Internal Revenue laws, generally involving tax fraud. Revenue Agents examine and audit the books of individual and corporate taxpayers to determine their federal tax liability.

2. One of these investigations resulted in the assessment of tax preparer penalties against Goulding pursuant to 26 U.S.C. § 6694(a) for negligent or intentional disregard of rules and regulations. At the time of this appeal, Goulding was challenging the assessments in a suit for refund. *Goulding v. United States*, (N.D.Ill.Civ. No. 83 C 5692).

the course of their investigations that the two agents had harassed him, made defamatory comments about him as well as his competence as an attorney, and conspired with Solomon to ruin his reputation as a lawyer and destroy his legal practice.[3]

On October 4, 1984, Goulding sent a letter to Robert Starkey, the Chicago District Director of the Internal Revenue Service claiming that Feinglass appeared to be biased and requesting an investigation of Feinglass' conduct. The plaintiff claimed in this letter that Feinglass had engaged in a course of conduct that included making derogatory statements about him to a number of clients. On November 15, 1984, Dietz caused five summonses to be issued on Goulding to obtain testimony and the production of certain exhibits dealing with the five limited partnerships then under investigation by the I.R.S.[4] A few days later, on November 19, 1984, the plaintiff wrote Solomon requesting that Dietz and Feinglass be removed from investigating any cases where he was involved representing clients and further that new agents be substituted. On December 6 of the same year the plaintiff sent a letter to the Commissioner of Internal Revenue, Roscoe Egger, voicing his concerns about the conduct of Dietz and Feinglass and requesting their removal from any audits involving Goulding. On January 30, 1985, the Chicago District Director of the Internal Revenue Service, Robert Starkey, responded to both the November 19th and December 6th letters[5] and informed the plaintiff Goulding that neither Dietz nor Feinglass would be removed from any of the pending investigations because based upon his investigation of the complaints he was convinced that "no conflict on the part of Revenue agents Dietz and Feinglass exist[ed]."

On March 8, 1985, the plaintiff sought a temporary restraining order against the three defendants to enjoin them from libeling, slandering or defaming him, threatening him with tax penalties, violating his constitutional privacy and due process rights, and interfering with his business by defaming him to his current or potential clients. That same day the plaintiff also filed complaints against the three defendants seeking a total of $17,000,000 in compensatory and punitive damages for alleged constitutional and common law torts.[6] On March 15, 1985, the district court denied Goulding's motion for a temporary restraining order.

After the filing of the defendants' motion for summary judgment on May 22, 1985, and submission for decision, the plaintiff on August 5 filed a motion requesting leave to supplement the record, to respond to the defendants' reply to the plaintiff's memorandum in opposition to summary judgment, and to amend his complaint to add a First Amendment claim. The trial court denied the plaintiff's August 5 motion.

In its order and decision dated September 6, 1985, the district court dismissed the complaints originally filed March 8, 1985 for lack of federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The plaintiff, on appeal, raises two issues: 1) Whether the district court properly dismissed the complaints against the defendants for lack of jurisdiction; and, 2) wheth-

---

**3.** Among the statements that the plaintiff claims Feinglass made was "all Goulding's deals are flaky. You should see how flaky his other deals are." Goulding also asserts that Dietz notified him at one point that he (Dietz) would audit every partnership Goulding ever formed.

**4.** Goulding failed to appear on December 10, 1984, and the United States Attorney filed five enforcement petitions on December 20, 1984. Goulding responded to the petitions by raising affirmative defenses and filing a counterclaim against Dietz on February 22, 1985. The counterclaim formed the basis of this suit. Defendants Solomon and Feinglass were later added as party defendants in a third party complaint. All five summonses were eventually enforced.

**5.** The December 6 letter was referred to the District Director's Office for response by the Commissioner of the Internal Revenue.

**6.** Goulding's charges included libel and defamation of character, tortious or malicious interference with contract, abuse of process and malicious prosecution, intentional infliction of emotional distress, conspiracy, Fourth Amendment violation of his rights, and violation of his Fifth Amendment rights.

er the district court properly denied the plaintiff's motion for leave to amend his complaints to assert violations of the First Amendment to the Constitution.

## II

A prerequisite in maintaining an action in federal court under 28 U.S.C. § 1331 [7] is that the plaintiff must allege a violation of the United States Constitution or a federal statute. In his appeal, Goulding asserts that under the Due Process Clause of the Fifth Amendment that the defendants under color of law deprived him of both protected property and liberty interests in violation of his Fifth Amendment right to due process. Specifically, the plaintiff alleges that the defendants' actions, including the alleged harassment, threats and slanderous and defamatory remarks, have caused him to lose clients and virtually ruined the value of his right to practice law, thus depriving him of a protected property interest. The plaintiff argues, alternatively, that he has suffered the deprivation of a protected liberty interest from damage to his reputation and attendant loss of clients because of the conduct of the defendants.

Goulding claims that he has a protected property interest and entitlement in his "business as a lawyer." [8] He alleges that the defendants' actions and statements have tarnished his reputation, destroyed his practice, and made him less desirable professionally, thus depriving him of a protected property right. The Supreme Court has stated that not every expectation is entitled to due process protection of the Fifth Amendment. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). A person does not have a property interest that merits due process protection unless he has a "legitimate claim of entitlement to it." *Id.* Property interests are:

> "[o]f course, ... not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

*Id.*

Analysis of Goulding's claimed deprivation of property and liberty interests must begin with the seminal Supreme Court case, *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In *Paul v. Davis* the Supreme Court stated that injury to reputation alone, "[a]part from some more tangible interests such as employment," is not sufficient to rise to the level of the deprivation of a property or liberty interest. 424 U.S. at 701, 96 S.Ct. at 1160. Goulding argues that a "tangible interest" —his law practice—has been rendered valueless by the actions of the defendants.

■ The Supreme Court in *Paul v. Davis* makes clear that to find the deprivation of a property interest in the fact situation before this court, Goulding's legal rights or status must have been removed or significantly altered. [9] We are unable to

---

**7.** Title 28, § 1331 provides:
> The district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

**8.** The plaintiff does not dispute that the I.R.S. is acting within its authority when investigating the limited partnerships in which he is involved.

**9.** In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the State allegedly deprived the petitioner of property and liberty interests, thus the Due Process Clause of the Fourteenth Amendment was triggered. Although the instant case involves alleged action by employees of the United States Government and, thus, the Due Process Clause of the Fifth Amendment is implicated, the language of *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), is still instructive:
> "It is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either 'liberty' or 'property' as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law, and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status."

understand after reviewing the plaintiff's complaint and the record what rights he claims to have either had removed or significantly altered. The plaintiff has not lost the right to practice law, his license to practice law has not been revoked or suspended, and he is still practicing before the I.R.S. Goulding has failed to cite any cases, nor have we found one case that establishes a property right in an individual's "business as a lawyer." We agree with the finding of the district court and hold that the plaintiff was not deprived of a property right.

Goulding cloaks his alleged deprivation of a liberty interest in much the same language as the alleged loss of a property interest: that his reputation has been damaged by the actions of the defendant with resulting loss of clients and business. *Paul v. Davis* held that the infliction by the government of a stigma on one's reputation, without more, does not infringe upon a liberty interest protected by the Constitution's due process safeguards.

■ Even though Goulding feels he may have been stigmatized by the investigations and statements allegedly made by the defendants, this does not amount to the deprivation of a liberty interest as set forth in *Paul v. Davis*. The plaintiff is not foreclosed from practicing law whether it be in tort, criminal, corporation or tax law. From the information set forth in record, he is still a member in good standing of the Illinois Bar and thus is qualified to represent clients before the I.R.S. The investi-

gations and alleged comments may very well have made him less attractive to clients,[10] but this Court stated in *Perry v. Federal Bureau of Investigation*, 781 F.2d 1294, 1302 (7th Cir.1986): "[a] liberty interest is not implicated merely by a reduction in an individual's attractiveness to potential employers." There is no legal barrier to Goulding pursuing his practice of law. We therefore hold that the district court's finding that Goulding was not deprived of a liberty interest was proper.[11]

### III

Goulding also appeals the trial court refusal to allow him to amend his complaint to include a claim based on the First Amendment,[12] thus we must decide whether the court erred in denying the plaintiff's motion to amend his complaint under Rule 15(a) of the Federal Rules of Civil Procedure.[13] "Of course, the grant or denial of a motion to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Knapp v. Whitaker*, 757 F.2d 827, 849 (7th Cir.1985). Thus, we set aside the district court's refusal to allow Goulding leave to amend only if the court abused its discretion.

■ This court in *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061 (7th Cir. 1979) stated:

"[A] motion [to amend] is always made to the sound discretion of the district court and the court may deny a leave to amend where the proposed amendment fails to allege facts which would support

424 U.S. at 710–711, 96 S.Ct. at 1165 (footnote omitted).

**10.** In the plaintiff's reply brief he states that he has been sued by investors in transactions audited by the defendants and has received threats of numerous additional suits.

**11.** We need not discuss the plaintiff's argument regarding whether the defendants are entitled to qualified immunity as government officials since we hold that the plaintiff was neither deprived of a property nor a liberty interest.

**12.** Goulding's motion to amend his complaint to add his First Amendment claim was filed on August 5, 1985. The defendants had previously

moved for summary judgment on May 22, 1985, and the plaintiff had responded on July 3, 1985.

**13.** Rule 15(a) of the Federal Rules of Civil Procedure provides in part:

A party may amend his pleadings once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

a valid theory of liability, ..., or where the party to amend has not shown that the proposed amendment has substantial merit...."

598 F.2d at 1063 (citation omitted). In the instant case the plaintiff claims his rights under the First Amendment were violated because the alleged vindictive acts (alleged threats of further audits and the imposition of penalties, alleged defamatory remarks about the plaintiff, an alleged threat to institute proceedings to bar him from practicing before the I.R.S.) of the defendants were in retaliation for the plaintiff's exercise of his right of free speech and freedom to petition the government for redress of grievances. The plaintiff attempts to transform the same arguments he makes under the Fifth Amendment and clothe them in the garb of a First Amendment claim. Like his claims under the Fifth Amendment, Goulding has failed to demonstrate how his rights under the First Amendment have been infringed. The I.R.S.'s investigations of his transactions and limited partnerships have continued for reasons that appear clearly justifiable. Our reading of the plaintiff's First Amendment claim and the record convinces us that the agents and their supervisor were merely fulfilling their duties in investigating potentially abusive tax schemes. We refuse to hold that the district court abused its discretion in refusing to allow the proposed amendment.[14] We agree with the trial court's denial of the plaintiff's motion to amend since the plaintiff's proffered amendment was without merit.

## IV

We hold that the district court's dismissal of the plaintiff's claims was proper because there was a lack of federal jurisdiction since the plaintiff has failed to demonstrate either a violation of the United States Constitution or a federal statute. We also hold that the district court's denial of the plaintiff's motion to amend his complaint was proper. Affirmed.

---

**14.** The plaintiff argues that since the district court failed to give a reason for denying his motion for leave to amend that the court abused its discretion. Leave to amend is "freely given when justice so requires." Here the plaintiff clearly failed to make the required showing.