966 F.2d 1133
 22 Fed.R.Serv.3d 1326
 FEDERAL DEPOSIT INSURANCE CORPORATION, Successor to Federal
Savings and Loan Insurance Corporation, as
Receiver for Manning Savings and Loan
Association, Plaintiff-Appellee,
v.
Gary J. KNOSTMAN, Trustee for the Chapter 7 Estate of Itex
Energy Corporation, Defendant-Appellant.
 No. 91-2792.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 26, 1992.
Decided July 2, 1992.
Rehearing Denied Oct. 23, 1992.
 
 1
 Glen H. Kanwit, William J. McKenna, Jr., John P. Ratnaswamy (argued), Robert W. Patterson, John L. Rogers, Hopkins & Sutter, Chicago, Ill., for plaintiff-appellee.
 
 
 2
 David A. Furlow, Rhett G. Campbell (argued), John R. Knight, Morris & Campbell, Houston, Tex., for defendant-appellant.
 
 
 3
 Before FLAUM and KANNE, Circuit Judges, and SHABAZ, District Judge.*
 
 
 4
 SHABAZ, District Judge.
 
 
 5
 The following principal issues are pursued in this appeal: (i) whether the district court abused its discretion in granting the plaintiff Federal Deposit Insurance Corporation ("FDIC") leave to amend its June 10, 1983 complaint on April 9, 1991; (ii) whether the district court erred in granting summary judgment in favor of plaintiff FDIC declaring that it, as the sole Receiver for Manning Savings and Loan Association ("Manning Savings"), was entitled to the proceeds of certain escrowed funds pursuant to contracts between Itex Energy Corporation ("Itex") and Manning Production Inc. ("Manning Production"), a wholly-owned subsidiary of Manning Savings; (iii) whether the district court abused its discretion in dismissing plaintiff FDIC's other claims without prejudice. We answer all of these questions in the negative and affirm the judgments.
 
 BACKGROUND
 Facts
 
 6
 Manning Savings was an Illinois-chartered savings and loan association whose accounts were insured by the Federal Savings and Loan Insurance Corporation ("FSLIC"). Manning Production was a wholly-owned subsidiary of Manning Savings. Itex was a corporation organized under Texas law, which was in the business of developing and selling oil and gas properties in Texas.
 
 
 7
 On January 28, 1983 Manning Production agreed to purchase sixteen oil and gas wells from Itex in Texas ("Itex Contract"). Contemporaneously Manning Production contracted with Itex, Jack W. Smith and William R. Coleman to purchase all outstanding capital stock of the Covoil Corporation ("Covoil"), a Texas corporation ("Covoil Contract"). Covoil's assets consisted of eighteen oil and gas wells.
 
 
 8
 Both contracts contained escrow provisions. The Itex Contract stated in relevant part:
 
 
 9
 21) At the closing called for herein, [Itex] agrees that out of the cash consideration due and payable by [Manning Production] to [Itex], [Manning Production] will escrow with Western Bank ... the sum of One Hundred Sixty-Two Thousand Five Hundred Dollars ($162,500.00), under an Escrow Agreement mutually acceptable to [Manning Production], [Itex] and Western Bank. It is agreed that such funds will be escrowed with Western Bank in the form of a Certificate of Deposit for a period of one (1) year from the date of closing. At the end of such 1-year period, accountants for [Itex] shall audit the books and records of [Manning Production], as they relate to the Subject Interests, to determine the cash flow realized from the Subject Interests for such period of time. In the event the cash flow for Subject Interests for the twelve (12) months after the date of closing, determined in accordance with generally accepted accounting principles applied on a basis consistent with those used by [Itex] in the fiscal year immediately preceding the date of closing, is not at least the sum of Nine Hundred Fifty Thousand Dollars ($950,000.00), then, in such event, the Escrow Agent will be directed, according to the terms of the Escrow Agreement, to forthwith pay to [Manning Production] from the escrowed funds a sufficient sum of money which, when added to the actual cash flow from Subject Interests for this period of time, totals the cash flow as guaranteed pursuant to this paragraph. In the event any funds are remaining after the payment to [Manning Production], such funds shall be immediately forwarded to [Itex] and the Escrow Agreement shall terminate. In the event sufficient funds are not available from the funds so escrowed and any interest earned thereon, [Itex] agrees to pay to [Manning Production] ... the balance of the funds necessary to comply with the guarantee contained herein.
 
 
 10
 The Covoil Contract included a similar escrow provision. Specifically, the Covoil Contract required that $100,000 be escrowed with Western Bank to be paid to Manning Production if the cash flow from the purchased oil and gas properties did not equal at least $550,000 twelve months after the contract's closing date. Also the Covoil Contract included a choice of law provision which stated that Texas law should govern the validity and interpretation of the agreement.
 
 
 11
 On about February 1, 1983 Manning Production wired $4.5 million, the amount due at the closing of the Itex and Covoil Contracts, to the trust account of attorney Larry W. Bass. Bass received these funds as the attorney for Itex, Covoil, Jack Smith and William Coleman. As directed by the parties to the contracts, Bass disbursed the majority of these funds. However, in accordance with the escrow provisions in the two contracts, Bass retained the required sums in his trust account. None of the parties to the two contracts ever requested Bass to prepare the escrow agreements. The funds were never deposited into Western Bank, but remained in Bass' possession, together with the accrued interest, either in his trust account or in other bank accounts in Houston, Texas or with Merrill Lynch or Paine Webber.
 
 
 12
 On February 3, 1983 the FSLIC was appointed the sole Receiver of all assets of Manning Savings. Thereafter the FSLIC incorporated MSC Holdings, Inc. ("MSC Holdings") and MPC Holdings, Inc. ("MPC Holdings") in Illinois. Manning Production was merged into MPC Holdings on February 15, 1983. MSC Holdings was the parent corporation of MPC Holdings. MPC Holdings was dissolved for failure to file an annual report and pay annual franchise taxes on July 1, 1988. Apparently MSC Holdings has also been dissolved.
 
 Litigation
 
 13
 On June 10, 1983 the FSLIC, in its corporate capacity and as the sole Receiver for Manning Savings, filed a complaint against Itex, Larry Bass, Jack Smith, William Coleman and others. On behalf of Manning Savings, the FSLIC sought to recover damages from a series of oil and gas transactions on the basis of fraud. The causes of action included: conspiracy to defraud; violation of the Racketeer Influenced and Corrupt Organizations Act; securities fraud; and rescission of the Itex and Covoil Contracts. On June 28, 1983 FSLIC filed an amended complaint.
 
 
 14
 Itex filed for bankruptcy on March 18, 1985 in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. In re Itex Energy Corporation, Case No. 85-01729. The action against Itex was automatically stayed due to the filing of the bankruptcy petition.
 
 
 15
 The FSLIC entered into a settlement agreement with Larry Bass and the district court granted the FSLIC's motion to dismiss its claim against Bass on January 31, 1989.
 
 
 16
 On August 9, 1989 Congress dissolved the FSLIC and the FDIC succeeded the FSLIC as the sole Receiver for Manning Savings.
 
 
 17
 By order dated October 11, 1990 the bankruptcy court granted the motion of plaintiff FDIC to lift the automatic stay to allow it to exercise its rights under the Itex and Covoil contracts and prosecute this action before the district court. In re Itex Energy Corporation, Case No. 85-01729-H5-7. Shortly thereafter plaintiff FDIC filed a motion for summary judgment seeking to recover the escrowed funds by enforcing the terms of the Itex and Covoil Contracts. Gary J. Knostman, Trustee of the Chapter 7 Estate of Itex, ("Itex Trustee") filed a cross-motion for summary judgment.[1]
 
 
 18
 By memorandum opinion and minute order dated April 9, 1991, the district court granted plaintiff FDIC's motion for summary judgment declaring that the FDIC is entitled to the escrow funds held by Larry Bass. The district court granted plaintiff FDIC leave to file an amended complaint to conform to the relief sought in its motion for summary judgment and to add Manning Production, the subsidiary of Manning Savings, as a party plaintiff.
 
 
 19
 Plaintiff FDIC filed a motion for leave to file an amended complaint which the district court granted on May 15, 1991. The district court held that the amendment related back to the complaint's original filing date. The district court also denied the motion of the Itex Trustee to file an answer and counterclaim. On the same day the district court entered judgment declaring that the plaintiff FDIC was entitled to the escrowed amounts held by Larry Bass in his trust account. Specifically, these amounts include the $162,500 under the Itex Contract and the $100,000 under the Covoil Contract together with any accrued interest. The district court found it had jurisdiction over Bass and ordered him to relinquish the funds to the plaintiff FDIC.
 
 
 20
 The defendant Itex Trustee moved the district court to either schedule the case for trial to dispose of all remaining claims or parties or, alternatively, to enter final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. The plaintiff FDIC moved for an order dismissing all claims not previously settled or ruled upon by the district court without prejudice and without costs to any party under Rule 41(a)(2) of the Federal Rules of Civil Procedure. On July 2, 1991 the district court granted plaintiff FDIC's motion and denied the motion of the defendant Itex Trustee.
 
 
 21
 The Itex Trustee filed his Notice of Appeal on July 30, 1991. He appeals from the following: the July 2, 1991 minute order; the May 15, 1991 orders; the April 9, 1991 minute order; and the minute order, dated January 9, 1984, denying the motion of defendants Harold Ticktin, Paul Olson and PDO Energy Corporation to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim.
 
 DISCUSSION
 The Amended Pleading and Related Issues
 
 22
 Pursuant to several theories the defendant Itex Trustee asserts that the plaintiff FDIC cannot enforce contract claims of Manning Production against Itex. Primarily the Itex Trustee argues that: (i) the FDIC lacks standing to enforce the contracts; (ii) the claims are barred by statutes of limitations; and (iii) the claims are barred by the equitable doctrine of laches. The crucial issue is whether the district court abused its discretion in granting the FDIC leave to amend its June 10, 1983 complaint on April 9, 1991. We will first address this issue and then discuss any related issues which remain.
 
 
 23
 The grant or denial of a plaintiff's motion to amend his or her pleading under Rule 15(a) of the Federal Rules of Civil Procedure is within the trial court's discretion. Goulding v. Feinglass, 811 F.2d 1099, 1103 (7th Cir.), cert. denied, 482 U.S. 929, 107 S.Ct. 3215, 96 L.Ed.2d 701 (1987). We will only set aside the order of the district court granting the motion for leave to file an amended complaint upon an abuse of discretion. See Jones v. Hamelman, 869 F.2d 1023, 1026 (7th Cir.1989) (citing Goulding, 811 F.2d at 1103).
 
 
 24
 In its April 9, 1991 memorandum opinion granting the FDIC declaratory judgment, the district court stated:
 
 
 25
 The trustee raises two technical objections. One is that the F.D.I.C. has not sought properly declaratory judgment in its complaint. This can be rectified by an amendment for which I give leave to make. Two is that the true party in interest is Manning Production, not Manning Savings and Loan. This objection comes too late and is of no merit. The parent corporation is the real party in interest of the claims of its wholly owned subsidiary. In any event since the complaint should be amended I give leave to add the subsidiary as a party plaintiff.
 
 
 26
 The FDIC then filed a motion for leave to amend, which the district court granted. The Itex Trustee filed his opposition to the motion and requested the district court to deny it or, alternatively, grant him leave to file his answer and counterclaim. The Itex Trustee also filed his answer to the FDIC's April 19, 1991 "Amendments to Complaint." By minute order dated May 15, 1991, the district court stated:
 
 
 27
 FDIC's motion for leave to amend its complaint to conform to the evidence is granted and the amendment relates back to the original filing date. I-Tex's motion to file an answer and counterclaim is denied. Its answers and claims are already before the Court and were considered in this court's ruling.
 
 
 28
 The FDIC added MPC Holdings as a party plaintiff in its April 19, 1991 "Amendments to Complaint." The FSLIC originally brought this action as the sole Receiver for Manning Savings. Manning Production, a wholly-owned subsidiary of Manning Savings, was one of the parties to the Itex and Covoil Contracts. The FSLIC sought to rescind these contracts in the original complaint. The district court recognized that Manning Production should be added as a party plaintiff. However, at the time the original complaint was filed, MPC Holdings had already succeeded Manning Production by merger and therefore the FDIC added MPC Holdings as party plaintiff.
 
 
 29
 The April 19, 1991 "Amendments to Complaint" also added Count IX requesting a declaratory judgment entitling the FDIC, as the sole Receiver of all assets of Manning Savings, to the escrowed funds held by Larry Bass pursuant to the Itex and Covoil Contracts. The original complaint sought to rescind these contracts and the FDIC's summary judgment motion, which the district court granted, sought to enforce the contracts. Accordingly, the district court granted the FDIC leave to amend the complaint to conform to the relief sought in its summary judgment motion. However, it could not have been determined until twelve months after the closing date of the Itex and Covoil Contracts whether the cash flow requirements had been met. The original complaint was filed on June 10, 1983 and the one year anniversary of the closing date of the two contracts was not until about February 1, 1984. Therefore, the cause of action did not accrue until after the filing of the original complaint.
 
 
 30
 The amended pleading technically is more properly classified as a supplemental pleading under Rule 15(d) rather than an amended pleading under Rule 15(a). A supplemental pleading is one which sets forth "transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed.R.Civ.P. 15(d). The events which culminated in the cause of action set forth in Count IX began prior to the filing of the complaint on June 10, 1983 and continued thereafter. That cause of action arose from the same contracts which are the basis of the original complaint. However, pursuant to these contracts, Manning Production's action under Count IX could not have accrued until about February 1, 1984, one year from the closing of the contracts. At that time the cash flow from the properties at issue in the Itex and Covoil Contracts could have been determined. Therefore, it would appear that the FDIC's amended pleading is technically a supplemental pleading. See Fed.R.Civ.P. 15(d).
 
 
 31
 The distinction between an amended pleading and a supplemental pleading is often disregarded for purposes of relation back under Rule 15(c). 6A Charles A. Wright et al., Federal Practice and Procedure § 1508 (1990). Specifically,
 
 
 32
 [I]f the original pleading gave defendant notice that the conduct, transaction, or occurrence is of a continuing nature, he should be prepared to defend against all claims arising out of it, whether they arose before or after the original complaint was filed. There is little basis to distinguish an amended and a supplemental pleading for purposes of relation back if defendant had notice of the subject matter of the dispute and was not prejudiced in preparing his defense.
 
 
 33
 Id. § 1508, at 204-05 (footnote omitted). An amendment relates back to the date of the original pleading if the claim set forth in the amended pleading "arose out of the conduct, transaction, or occurrence" stated in the original pleading. Fed.R.Civ.P. 15(c). The Supreme Court set forth the four factors required for relation back under Rule 15(c):(1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.
 
 
 34
 Schiavone v. Fortune, 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986).
 
 
 35
 In applying Rule 15(c) to the supplemental pleading attempted here, the FDIC's April 19, 1991 "Amendments to Complaint" relate back to the original complaint. Although the FDIC pursued a different theory under a different cause of action in Count IX, the basis of plaintiffs' claims in both the original complaint and Count IX involved the Itex and Covoil Contracts. Therefore the original and supplemental pleadings arose out of the same transaction. See Fed.R.Civ.P. 15(c). As the parties' obligations under the contracts continued after the action was filed, Itex, and subsequently the Itex Trustee, had notice and was not prejudiced in preparing its defense. Itex should have been prepared to defend the action against all claims which could have arisen pursuant to the two contracts before or after the filing of the complaint. The action in the district court was automatically stayed in March 1985 when Itex filed for bankruptcy. The bankruptcy court granted the FDIC's motion to lift the stay in October 1990. The FDIC then filed for summary judgment under a different theory than in its original complaint, because it recognized that this was the only manner in which it could recover as the bankruptcy estate of Itex had been dissipated.
 
 
 36
 Accordingly, the district court did not abuse its discretion when allowing the FDIC to amend or supplement its pleading and by finding that the amendment or supplement related back to the date of the original complaint, June 10, 1983.[2]
 
 
 37
 The Itex Trustee also argued that the FDIC's claim, as set forth in Count IX, is barred by the equitable doctrine of laches. The defense of laches requires a lack of diligence on the part of the plaintiff and prejudice to the defendant from the delay. Zelazny v. Lyng, 853 F.2d 540, 541 (7th Cir.1988).
 
 
 38
 The FDIC and the FSLIC were diligent in bringing the action. Shortly after the Itex and Covoil Contracts were entered into, the FSLIC brought the action seeking to rescind them. The action was stayed from about March 18, 1985 until October 11, 1990 due to the filing of the bankruptcy petition of Itex. The FSLIC filed motions to lift the automatic stay when Itex entered bankruptcy. In May 1986 the bankruptcy court partially granted the FSLIC's motion for relief from the stay by allowing discovery of the claims against Itex in district court. When the bankruptcy court lifted the stay on October 11, 1990, the FDIC filed its motion for summary judgment shortly thereafter.
 
 Summary Judgment
 
 39
 On appeal the Itex Trustee challenges the district court's grant of partial summary judgment on a number of grounds. Primarily at issue is whether the district court properly granted summary judgment in favor of the FDIC declaring that it was entitled to the funds held by Larry Bass.[3] We will address the issues pursued by the Itex Trustee which have not been previously discussed.
 
 
 40
 We review a district court's determination of summary judgment de novo. First Wisconsin Trust Co. v. Schroud, 916 F.2d 394, 398 (7th Cir.1990). Summary judgment is appropriate when, after both parties have the opportunity to submit evidence in support of their respective positions and the court has reviewed such evidence in the light most favorable to the nonmovant, there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A factual dispute is material only if its resolution might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is genuine only if a reasonable factfinder could return a verdict for the nonmoving party. Id. The nonmoving party has the obligation to set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).
 
 
 41
 A. The FDIC's Entitlement to the Escrowed Funds
 
 
 42
 First, the Itex Trustee claims that the escrows set forth in the Itex and Covoil Contracts were never created. In its April 9, 1991 memorandum opinion the district court stated:
 
 
 43
 The contracts called for escrows with Western Bank in Houston. These escrows were not created. Instead the money was and is held by Larry W. Bass, an attorney for I-Tex.
 
 
 44
 * * * * * *
 
 
 45
 The absence of an escrow agreement with Western Bank does not damage the F.D.I.C. position here. There is no disputing that an escrow in fact was established to which no one protested. Bass ... put the money in his trust account and kept it there. The contract and the conduct under it cannot be reasonably interpreted to defeat the escrow.
 
 
 46
 We agree with the district court.
 
 An escrow is defined as:
 
 47
 A legal document (such as a deed), money, stock, or other property delivered by the grantor, promisor or obligor into the hands of a third person, to be held by the latter until the happening of a contingency or performance of a condition, and then by him delivered to the grantee, promisee or obligee.
 
 
 48
 Black's Law Dictionary 545 (6th ed. 1990). When property is delivered in escrow, a trust is created. 1 Restatement (Second) of Trusts § 32(d) (1959).
 
 
 49
 The evidence shows that the escrows were created. Paragraph 21 of the Itex Contract and paragraph 10(f) of the Covoil Contract each clearly and definitely state the terms of an escrow. They designate who is to hold the funds and who is entitled to them under the conditions prescribed. Manning Production wired $4.5 million to attorney Larry Bass on about February 1, 1983. In his affidavit Bass stated that he retained $162,500 in his trust account pursuant to paragraph 21 of the Itex Contract and $100,000 in his trust account pursuant to paragraph 10(f) of the Covoil Contract. Further, he stated that he has held these sums, together with any accrued interest, since February 1983 under his name as trustee in either his trust account or other bank accounts, and "[a]t all times since 1983, I have performed these duties as custodian of the funds which I received by wire transfer in 1983, and as the attorney for [Itex], Jack W. Smith, [Covoil], and William R. Coleman." It is undisputed that none of the parties to the two contracts requested Bass to prepare a formal escrow agreement. The funds were never deposited with Western Bank, but remained in his possession. That the contract provisions creating a formal escrow agreement and designating an escrow of the funds with Western Bank were not precisely followed is not decisive. Escrows were nonetheless created.[4]
 
 
 50
 Next, the Itex Trustee asserts that there are genuine issues of material fact which preclude summary judgment. Specifically, he claims that the cash flow shortfalls and the performance of Manning Production under the contracts are disputed.
 
 
 51
 There is no material factual dispute concerning the cash flow shortfalls, because there is no evidence that the resolution of any factual dispute in this area might affect the outcome of the action. See Fed.R.Civ.P. 56(c); Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. The district court recognized plaintiffs' expert Edwin Cable who determined that the calculated net income from the properties previously owned by Itex from February 1, 1983 through January 31, 1984 was $503,893 and the calculated net income from the properties previously owned by Covoil over that same time period was $182,990. In both instances the actual cash flow fell well below the cash flow required under the two escrows. The Itex Contract required a cash flow of at least $950,000 in the twelve months following the closing date and the Covoil Contract required a cash flow of at least $550,000. The Itex Trustee offered no independent proof of the cash flow from the properties. Rather, he submitted the affidavit of Robert C. Thomas criticizing Cable's evaluation on largely technical grounds. For example, Thomas claimed that Cable's use of the term "net income," was not the same as the contracts' use of the term "cash flow." Also, Thomas criticized Cable for not reviewing certain of the books and records of Itex, but then claimed that to his knowledge they do not exist. Thomas also asserted that Cable should have based the cash flow on the actual sales price of oil, the actual contract price of gas and the actual production expenses concerning the properties at issue which information is not available. Cable based his evaluation on the field production history of Itex, the records of oil and gas production reported to the Texas Railroad Commission and the direct operating expenses experienced by the operators of the oil and gas properties covered by the two contracts in 1983. Most of this information is public record. Cable also testified at the stay hearing in the bankruptcy court where he was cross-examined by the Itex Trustee. The district court was justified in relying on Cable's evaluation of the cash flow from the oil and gas interests.
 
 
 52
 Further, there is no genuine issue of material fact concerning Manning Production's performance under the two contracts. The district court stated: "Indeed the contracts can and should be read to mean that I-Tex must show that the cash flow requirement was met and, absent this proof, it has no right to any funds in escrow." We agree. The objections of the Trustee concerning the use of mutually acceptable accountants and generally accepted accounting principles, consistent with those used by Itex and Covoil in the fiscal year preceding the closing, are technical. The fact is that the Itex Trustee offered no evidence creating an issue of material fact as to the cash flow shortfalls and Manning Production's performance.
 
 
 53
 The Itex Trustee did not produce any evidence showing that there was a genuine issue of material fact concerning the cash flow. The actual estimated cash flow from the properties were far below that required by the contracts. In other words, he did not show that either: (i) the required cash flow was met and Manning Production was entitled to none of the funds, or (ii) the cash flow was high enough that Manning Production was only entitled to part of the funds. Accordingly the FDIC, as receiver for Manning Savings, the parent corporation of Manning Production, was entitled to the escrowed funds. To come to any other conclusion would contradict the plain reading of the contracts and give Itex a windfall. The contractual provisions requiring a minimum amount of cash flow within the first twelve months of the signing of the contracts were of vital importance to both parties.
 
 
 54
 B. The Escrowed Funds and Itex's Bankruptcy Estate
 
 
 55
 The Itex Trustee contends that the escrowed funds were part of the bankruptcy estate of Itex. The evidence supports the district court's finding that the funds belonged to Manning Production in February 1984 when the cash flow requirements were not met. At that time the interest of Itex in these funds was extinguished. This was prior to the bankruptcy filing and accordingly the escrowed funds are not part of the bankruptcy estate.
 
 C. Jurisdiction Over Larry Bass
 
 56
 Finally, the Itex Trustee claims that the district court lost jurisdiction over Larry Bass and the escrowed funds when it dismissed the FSLIC's claims against Bass with prejudice pursuant to a settlement agreement. In its April 9, 1991 memorandum opinion and its May 15, 1991 judgment order the district court found that it had jurisdiction over Bass. The Itex Trustee agreed that the district court had jurisdiction to award declaratory relief to either the Itex Trustee or the FDIC concerning entitlement to the escrowed funds. Under the settlement agreement plaintiff FSLIC reserved its rights to the escrow accounts. We see no reason to find that the district court lacked jurisdiction over Bass and those funds.
 
 
 57
 Accordingly the district court's decision to grant summary judgment will be affirmed.[5]
 
 
 58
 Dismissal of Plaintiff FDIC's Other Claims Without Prejudice
 
 
 59
 The dismissal of a plaintiff's action without prejudice under Rule 41(a)(2) of the Federal Rules of Civil Procedure is within the "sound discretion of the district court" and may only be reversed if the appellant shows an abuse of that discretion. Kovalic v. DEC Int'l, Inc., 855 F.2d 471, 473 (7th Cir.1988). "The district court abuses its discretion only when it can be established [that] the defendant will suffer 'plain legal prejudice' as the result of the district court's dismissal of the plaintiff's action." Id. (quoting United States v. Outboard Marine Corp., 789 F.2d 497, 502 (7th Cir.), cert. denied, 479 U.S. 961, 107 S.Ct. 457, 93 L.Ed.2d 403 (1986)). Previously we have set forth certain factors to be considered in determining whether a defendant suffered "plain legal prejudice:"
 
 
 60
 [T]he defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant.
 
 
 61
 Id. at 473-74 (quoting Pace v. Southern Express Co., 409 F.2d 331, 334 (7th Cir.1969)).
 
 
 62
 After the district court granted the plaintiff FDIC's motion for partial summary judgment, the FDIC filed a motion to dismiss without prejudice and without costs pursuant to Rule 41(a)(2) all of its other claims not previously settled or resolved by the district court. The Trustee objected to the motion primarily because he wanted the remaining claims to be dismissed with prejudice. The district court granted plaintiff FDIC's motion.
 
 
 63
 We find that the Itex Trustee has failed to demonstrate that he will suffer "plain legal prejudice" if the district court's dismissal order is upheld. The Itex Trustee claims that he and his predecessor, Itex, have "gone to considerable effort and expense to prepare for trial." He asserts that the FDIC engaged in excessive delay, because "[a]fter seven and a half years of litigation, the FDIC filed a motion for summary judgment on a single, totally new cause of action, which necessitated the filing of an amended/supplemental complaint." However, the Itex Trustee conveniently omits the fact that the action against Itex was stayed from about March 18, 1985 until October 11, 1990 due to the filing of the bankruptcy petition by Itex. The bankruptcy estate of Itex was dissipated. As the district court pointed out in its April 9, 1991 memorandum opinion, once the stay was lifted the FDIC pursued a theory different from those stated in the original complaint, because it recognized that this was the only manner in which it would be able to recover. Both parties sought a final appealable order. In its motion to dismiss the remaining claims without prejudice, the FDIC stated that it would not be cost effective to pursue those claims due to the financial situations of the remaining defendants, including Itex. The FDIC represented that it did not anticipate seeking a reinstatement of any claims included in the motion. By filing this motion the FDIC sought to preserve its right to seek further remedies should the financial situation of the bankruptcy estate of Itex change. Under these circumstances we find that the district court did not abuse its discretion in dismissing plaintiff's claims without prejudice and without costs.
 
 CONCLUSION
 
 64
 We have considered all other arguments advanced by the Itex Trustee. Finding them all without merit, we affirm the judgments below.
 
 
 
 *
 The Honorable John C. Shabaz, of the Western District of Wisconsin, is sitting by designation
 
 
 [1]
 The district court granted the motion of the Itex Trustee to substitute him as the real party in interest in place of Itex pursuant to Rule 25(c) of the Federal Rules of Civil Procedure
 
 
 [2]
 The Itex Trustee argued that the FDIC's claim regarding the escrowed funds is barred by statute of limitations, because the supplemental complaint does not relate back to the date of the original complaint. However, because we find that the FDIC's supplemental pleading relates back to the date of the original complaint, the statute of limitations argument is moot
 Further, the Itex Trustee's standing arguments lack merit. The district court found in its April 19, 1991 memorandum opinion that the parent corporation, Manning Savings, is the real party in interest concerning the claims of its subsidiary, Manning Production, which was added as a party plaintiff. We find the district court did not abuse its discretion by allowing the FDIC to amend, or supplement, its complaint and add the subsidiary. The FDIC, as successor to the FSLIC, is the sole Receiver of Manning Savings. The district court also found that the Itex Trustee's technical objection, that the true party in interest is Manning Production and not Manning Savings, came too late.
 
 
 [3]
 The Itex Trustee claims that the law of Texas, not Illinois, governs the construction of the two contracts. The parties do not claim that concerning these issues the laws of the two states differ. Nor is it necessary that we analyze state law to resolve the issues presented. Accordingly, we do not need to discuss choice of law
 
 
 [4]
 The Trustee's argument, that Manning Production waived its rights when it did not prepare a formal escrow agreement and appoint an escrow agent, is moot
 
 
 [5]
 The Itex Trustee also argued that the district court's denial of his motion for leave to file answer and counterclaim pursuant to his "Motion to Substitute Pursuant to Rule 25(c) and for Leave to File Answer and Counterclaim" was an abuse of discretion. We disagree. The district court noted that the answers and claims were already before the court and had been considered